**WEST CHESTER UNIVERSITY OF PENNSYLVANIA, Petitioner**

**v.**

**Timothy BROWNE and Local Union No. 98, International Brotherhood of Electrical Workers, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 11, 2013.

Decided June 19, 2013.

Michael S. Ferguson, Harrisburg, for petitioner.

Stephen J. Holroyd, Philadelphia, for respondents.

BEFORE: LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

West Chester University (University), a state university, petitions for review of a final determination of the Office of Open Records (Open Records) granting Timothy Browne's appeal of the University's denial

of his request for records under the Right-to–Know Law.[1] The University denied Browne's request because it did not possess the records he requested, which related to the employee benefits program of one of the University's construction contractors. Because Open Records erred in holding that the requested information is "directly related" to a contract delegating a governmental function, we reverse.

On March 4, 2012, Browne, the business representative for the International Brotherhood of Electrical Workers Local Union No. 98, submitted a written request to the University seeking a copy of "all benefits plans" of Brendan Stanton, Inc. (Contractor), a private company hired to perform electrical work in the construction of the University's Student Recreation Center. Reproduced Record at 001 (R.R. ___).[2] Browne sought the information to determine whether the University's funds were being used by Contractor for a *bona fide* employee benefits program.

On March 12, 2012, the University's open records officer notified Browne by email that "[y]our request is denied pursuant to 65 P.S. § 67.705. The University does not have any records in its possession relating to the request." R.R. 026. The University had previously granted a request from Browne for the certified payroll records from Contractor for its work on the Student Recreation Center. These payroll records listed each employee, the type of work performed, the hours worked, the wage rate received, and the net amount paid.

On March 14, 2012, Browne appealed to Open Records, asserting that the University has a duty under the Prevailing Wage Act[3] to ascertain whether contractors it hires using state funds are providing their employees with *bona fide* benefit plans. Given that assumed duty, Browne believed the University should have information regarding Contractor's benefits plan. The University countered that it did not have the requested information in its possession and that it had no obligation to obtain it. The University further argued that Browne was not entitled to the information because it did not directly relate to a governmental function.

The University submitted a copy of its contract with Contractor, which provided that the Prevailing Wage Act would apply to the project. R.R. 088. Specifically, Rider B, Article 3, Paragraph 3.4.101 stated:

*Wages:* The Contractor is hereby notified that this contract may be subject to the provisions, duties, obligations, remedies and penalties of the Pennsylvania Prevailing Wage Act, 43 P.S. 165–1 ET Seq., which is incorporated herein by reference as if fully set forth herein. *The Contractor should refer to Attachment 1* to determine If Prevailing Wages are applicable to this project. All provisions and regulations of the Federal and State Wages Acts shall be

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. The request stated:
   With respect to the project known as West Chester University New Student Recreation Center, it is hereby requested pursuant to 65 P.S. Section 67.101 et. seq. that any and all documents be produced containing the following information: A copy of all of Brendan Stanton, Inc. benefit plans which they use to make deduction from their employees weekly paychecks, or a copy of the used [sic] to ascertain if these funds are being deposited into *bona-fide* programs. R.R. 001.

3. Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1–165–17.

adhered to in the performance of this work.

*Id.* (emphasis added). "Attachment 1" set forth the "Prevailing Wages Project Rates" that had been established by the Pennsylvania Department of Labor and Industry's Bureau of Labor Law Compliance for the University's building project. R.R. 127–133. Attachment 1 listed the "Hourly Rate" and "Fringe Benefits" hourly rate, and the sum "Total" of those amounts, to be paid to each classification of tradesperson who worked on the project. By way of example, Attachment 1 listed the prevailing minimum wage for electricians as $62.48 per hour; this total consisted of an "hourly rate" of $40.21 and a "fringe benefit" rate of $22.27, for a total of $62.48 per hour. R.R. 128. The contract between the University and Contractor did not require Contractor to establish a benefits plan for its employees, let alone submit it to the University.

■ On June 20, 2012, Open Records granted Browne's appeal and ordered the University to acquire documentation from Contractor about its benefits plan and provide it to Browne. Open Records found that because Attachment 1 referred to "fringe benefits," the benefits plan of Con-

tractor was a public record that should be made available to Browne. The University now petitions for this Court's review.[4]

On appeal, the University raises two arguments. First, the University argues that Contractor's benefits plan does not constitute a "record" as defined in Section 102 of the Right–to–Know Law, 65 P.S. § 67.102. Second, the University argues, alternatively, that even if the benefits plan is a "record" under Section 102, it does not constitute a "public record" under Section 506(d)(1) of the Right–to–Know Law, 65 P.S. § 67.506(d)(1).[5]

■ The Right–to–Know Law is designed to promote transparency in the government by allowing broad public access to government information. *Bowling,* 990 A.2d at 824. Section 302 of the Right–to–Know Law provides that "[a] local agency shall provide public records in accordance with this act." 65 P.S. § 67.302(a). The University is a state agency and is required to disclose public records. *Dynamic Student Services v. State System of Higher Education,* 548 Pa. 347, 353, 697 A.2d 239, 242 (1997).

■ Section 102 of the Right–to–Know Law defines a "record" as:

**4.** In Right–to–Know Law appeals, we independently review Open Records' adjudication and may substitute our own findings of fact for that of the agency. *Bowling v. Office of Open Records,* 990 A.2d 813, 818 (Pa.Cmwlth. 2010), *petition for allowance of appeal granted,* 609 Pa. 265, 15 A.3d 427 (2011). We are afforded "the broadest scope of review." *Id.* at 820. We may supplement the record by conducting a hearing or direct such supplementation by remanding the matter to Open Records. *Id.* at 823 n. 11. We may even "accept additional evidence and make [our] own factual findings." *Department of Conservation and Natural Resources v. Office of Open Records,* 1 A.3d 929, 936 (Pa.Cmwlth.2010).

**5.** In its brief, the University raises a third issue. It argues that because the benefits

plan is in the possession of Contractor, not the University, there is no presumption that it is a public record. Browne does not contest this issue, stating in his brief that

> [u]nder the general rule, records in a Commonwealth agency's possession are presumed to be public records. *See* 65 P.S. § 67.305. However, when, as here, the records are in the possession of another entity, the burden of proving that the requested information is a "public record" rests with the requester. *See Barkeyville Borough v. Stearns,* 35 A.3d 91, 94 (Pa.Cmwlth.2012).

Browne's Brief at 7. Therefore, in the present case, Browne would bear the burden of proving that Contractor's benefits plan is a "public record."

Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is *created, received or retained* pursuant to law or *in connection with a transaction, business or activity of the agency.*

65 P.S. § 67.102 (emphasis added). This definition has two parts. First, the information must document a transaction or activity of an agency. *Allegheny County Department of Administrative Services v. A Second Chance, Inc.,* 13 A.3d 1025, 1034 (Pa.Cmwlth.2011). This Court has held that the names, birth dates, and hire dates of a private contractor's employees who perform services for a governmental agency document a transaction or activity of the agency because they are evidence of the contract. *Id.* at 1034–35. Second, the information must be created, received or retained pursuant to law or in connection with a transaction, business or activity of the contracting agency. *Id.* at 1035. This prong is not limited to information created, received or retained by the agency; it may include information created by a private contractor in connection with its contractual obligations to the agency. *Id.*

■ In the present case, Contractor's benefits plan is not a "record" under the Right–to–Know Law because the plan information does not document a transaction or activity of the University, nor was it created, received or retained by the University. Contractor's employee benefits plan relates only to the relationship between Contractor and its employees, not the relationship between Contractor and the University. Assuming Contractor has one or more benefits plans, the University played no role in creating them. Stated otherwise, Contractor's employee benefit plan documents were not created in connection with its contract with the University. The contract between the University and Contractor does not mention an employee benefit plan, and it does not require Contractor to provide a copy of these plan documents to the University.

Browne argues that because the employees were working in connection with a contract between the University and Contractor, the benefits plan information he requested documents a transaction or activity of the University. He argues that the benefits plan was created in connection with a transaction of the University. Browne argues from a false premise. First, the contract between the University and Contractor did not require that Contractor have an employee benefits plan, only that Contractor pay its employees the prevailing minimum wage. If Contractor did not provide any "fringe benefits," it would still have to pay electricians $62.48 per hour. Second, Contractor's benefits plan, whatever it is, was not established "in connection" with the contract between the University and Contractor. Nor does the benefits plan prove the existence of that contract, as Browne asserts.

Browne further argues that the benefits plan is a "record" of the University under Section 102 of the Right–to–Know Law because the University had constructive possession of the benefits plan. This is because the University had a duty under the Prevailing Wage Act to ascertain whether Contractor had a *bona fide* benefits plan for its employees. We disagree.

A contract is subject to the Prevailing Wage Act if it is for a public work project in excess of $25,000. *See* Section 2(5) of the Prevailing Wage Act, 43 P.S. § 165–2(5). The Prevailing Wage Act requires that employees be paid the prevailing minimum wage set by the Secretary of Labor and Industry. *See* Sections 3 and 5 of the Prevailing Wage Act, 43 P.S. §§ 165–3, 165–5. Section 9.102 of the applicable reg-

ulations defines "prevailing minimum wage" as

> [r]ates as determined by the Secretary, as payable in the locality in which the public work is to be performed, for the respective crafts ... including the amount of contributions for employe benefits as required by the act.

34 Pa.Code § 9.102. Section 9.102 then defines "contributions for employe benefits" to be

> "Fringe Benefits" paid or to be paid, including payment made whether directly or indirectly, to the workmen for sick, disability, death, other than Workmen's Compensation, medical, surgical, hospital, vacation, travel expense, retirement, and pension benefits.

*Id.* Contractors are required to keep accurate records reflecting each employee's name, craft or classification, hours worked and actual hourly rate of wage paid. Section 6 of the Prevailing Wage Act, 43 P.S. § 165–6. A contractor is required to keep these records available for inspection for two years after payment and must file with the agency a weekly statement containing such information and certifying that workmen have been paid in strict conformity with the prevailing minimum wage determination. *Id.;* 34 Pa.Code §§ 9.109, 9.110(a). The contracting agency has a duty to ensure that the statements are accurate and that the contractor is actually paying the prevailing minimum wage. Section 10 of the Prevailing Wage Act, 43

P.S. § 165–10; 34 Pa.Code §§ 9.104(b),[6] 9.110(a).

■ The Prevailing Wage Act and its regulations do not contain any provisions that require contractors to establish an employee benefits plan, nor do they require the contracting agency to inspect the contents of plan documents where a contractor has created them. The prevailing minimum wage includes both the hourly wage and the value of fringe benefits. The fringe benefit rate is for payments made directly *or indirectly* for many possible benefits, including time off for vacation and sickness; it is not limited to a *"bona fide"* benefits plan.

■■ Here, because the contract was subject to the Prevailing Wage Act, the University needed to inspect Contractor's certified payroll records to ensure Contractor's employees were receiving the prevailing minimum wage. Those records were required to contain the worker's name, classification, hours worked and actual hourly rate of wage paid, but they were not required to contain information about the contents of a benefits plan. The University was *not* required to ensure that Contractor even has a *bona fide* benefits program as argued by Browne. The University was required only to ensure that the proper amounts were paid. It is irrelevant how the fringe benefit rate was used; it was only relevant that the employee received the prevailing minimum wage. Here, the University satisfied its duties under the Prevailing Wage Act by review-

---

**6.** Section 9.104(b) of the regulations provides that:

> It is the duty of the public body to enforce the posting of wage rate determinations in accordance with the provisions of section 9 of the act (43 P.S. § 165–9) and § 9.108 (relating to posting of wage rates). The fiscal officer of the public body, the treasurer or other officer of the public body, charged with the custody and disbursement

of the funds of the public body, shall ascertain that the wage rates as determined by the Secretary are paid and that the job classifications are maintained, otherwise it is his duty to hold up final payment and to inform the Secretary of the failure by the contractor or a subcontractor to comply with the act.

34 Pa.Code § 9.104(b).

ing the certified payroll records submitted by Contractor; it was not required to maintain, inspect, or possess any documentation related to Contractor's benefits plan.[7]

Accordingly, we reverse the determination of Open Records.

### *ORDER*

AND NOW, this 19th day of June, 2013, the order of the Office of Open Records dated June 20, 2012, in the above-captioned matter is hereby REVERSED.

---

7. We need not consider the University's second issue. Because Contractor's benefits plan is not a "record" under Section 102 of the Right–to–Know Law, 65 P.S. § 67.102, *a fortiori*, it is not a "public record" under Section 506(d)(1) of the Right–to–Know Law, 65 P.S. § 67.506(d)(1).