IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Edward Greim, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 105 C.D. 2024 |
| | : | Argued: November 7, 2024 |
| Pennsylvania State Police (Office | : | |
| of Open Records), | : | |
| Respondent | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  January 17, 2025

Edward Greim (Requester) petitions for review of a January 12, 2024, final determination of the Pennsylvania Office of Open Records (OOR) denying his appeal under the Right-to-Know Law (RTKL).[1]  In so doing, the OOR upheld the decision of the Pennsylvania State Police (State Police) to deny Requester's request for certain email records of its personnel and officers as not sufficiently specific. Upon review, we reverse.

## Background

On October 6, 2023, Requester submitted to the State Police a written request under the RTKL (Request) for the following records:

> 1. Any and all communications relating to Mark Houck's September 20, 2022, indictment or Mark Houck's September 23, 2022, arrest.
>
> 2. Any and all communications relating to the Houck family.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

3. Any and all communications relating to any request for assistance from [State Police] officers in the arrest of Mark Houck.

4. Any and all communications relating to pro-life people OR Catholicism (including adherents of Catholicism) OR Christianity (including adherents of Christianity).

5. Any and all communications regarding or relating to the organization, Kings Men.

6. Any and all communication relating to communications with any other local, state, or federal elected official, or the [Federal Bureau of Investigation] Philadelphia field office, regarding any of the above topics.

7. *All emails generate[d] by, received by, or exchanged between or including [State Police] personnel or officers, including the following search terms: "Houck," "King's Men," "Kings Men," "abortion," "pro-life," "prolife," "Christian," "Christianity," "Catholic," "Catholicism," "radial-traditionalist, Catholic," "radical traditional Catholic," "RTC," and/or "Roman Catholic."*

For purposes of Requests 1-6, we believe that communications may exist between or including the following individuals: Trooper Michael Rogers, Trooper Juan Barrios, the supervisor(s) of Trooper Michael Rogers and Juan Barrios, or any officer that was involved in the approval or investigation of the decision to have Michael Rogers and Juan Barrios participate in Mr. Houck's arrest (including forwarded email messages or CC or BCC email messages).

*For purposes of this Request, and unless otherwise indicated, the timeframe of the records requested herein is from May 1, 2022, to September 30, 2022; and January 1, 2023, to February 8, 2023.*

Reproduced Record at 1a-2a (R.R. __) (emphasis added) (emphasis in original omitted).

On November 27, 2023, following a 30-day extension, the State Police denied the Request, stating that its search found no records responsive to Item Nos.

2

1-6 of the Request. It denied Item No. 7 of the Request for the stated reason that it was not sufficiently specific, as required under Section 703 of the RTKL.[2] The State Police provided a verification from its open records officer that attested to the statements in the denial.

On December 18, 2023, Requester appealed to the OOR, arguing that Item No. 7 of the Request was sufficiently specific. The OOR invited both parties to supplement the record. On December 29, 2023, the State Police declined, stating it would rely upon its response and attestation. Requester likewise did not supplement the record.

On January 12, 2024, the OOR denied Requester's appeal and determined that Item No. 7 failed to satisfy the three-part test for sufficient specificity set forth in *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1124 (Pa. Cmwlth. 2015) (*Pittsburgh Post-Gazette*), which examines the subject matter of the request; the scope of the documents sought; and the time frame for which the records are sought.

The OOR acknowledged that keywords may be used to identify the subject matter of a request. Nevertheless, the OOR found that the keywords in Item

---

[2] 65 P.S. §67.703. It states as follows:

> A written request for access to records may be submitted in person, by mail, by e-mail, by facsimile or, to the extent provided by agency rules, by any other electronic means. A written request must be addressed to the open-records officer designated pursuant to section 502. Employees of an agency shall be directed to forward requests for records to the open-records officer. *A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested* and shall include the name and address to which the agency should address its response. A written request need not include any explanation of the requester's reason for requesting or intended use of the records unless otherwise required by law.

65 P.S. §67.703 (emphasis added).

3

No. 7 of the Request, such as "Catholic" and "Christian," were too general because they were likely to appear throughout the State Police's emails "in a vast array of context." OOR Final Determination at 5-6; R.R. 24a-25a. While Item Nos. 1-6 of the Request showed "a shared concern with Mr. Houck's arrest," Item No. 7 was not "included in any of the refinements of scope in the Request's later paragraph, and the Request specifies that the scope is to include the entirety of the [State Police], including all employees and agents." OOR Final Determination at 6; R.R. 25a. The OOR was also critical of the "lengthy timeframe" of the Request. OOR Final Determination at 5; R.R. 24a. Viewing "the structure of the Request" as a whole, the OOR concluded that Item No. 7 did not pass the *Pittsburgh Post-Gazette* specificity test. OOR Final Determination at 6; R.R. 25a.

Requester petitioned for this Court's review.

## Appeal

On appeal, Requester argues that the OOR erred in its application of the three-part test in *Pittsburgh Post-Gazette*, 119 A.3d at 1124. Item No. 7 of the Request contained a subject matter in its specific list of search items; identified a discrete group of documents by type, *i.e.*, email communications; and included a finite time frame of six months. As such, the Request was sufficiently specific under Section 703 of the RTKL.

In support, Requester explains that a RTKL request need not identify a particular agency transaction or activity; it can identify the subject matter of the request with keyword search terms. Requester argues that his keyword search terms identified the subject matter because the search terms are "closely related" to each other, and, read in conjunction with Item Nos. 1-6, they relate to Mark Houck, his arrest by the State Police, and his organization "Kings Men." Requester Brief at 13;

4

Reply Brief at 3. Requester also argues that because the request is limited to emails sent over a period of six-months, it satisfies the finite time requirement of *Pittsburgh Post-Gazette*.

The State Police responds that the OOR did not err. The keywords in Item No. 7 did not identify a subject matter. Unlike Item Nos. 1-6, which specified the potential records custodians and agency transaction, *i.e.*, the arrest of Mark Houck, Item No. 7 of the Request lacked the "hallmarks of context." State Police Brief at 13. Absent context for the 14 keywords, the Request lacked a meaningful subject matter, making it impossible for the State Police to respond to the Request.

**Applicable Legal Principles**

In appeals of OOR decisions, this Court is the ultimate factfinder. Section 1301 of the RTKL, 65 P.S. §67.1301. Accordingly, our standard of review of a final determination of the OOR is *de novo*, requiring no deference to the OOR. *Bowling v. Office of Open Records*, 75 A.3d 453, 474 (Pa. 2013). In addition, this Court is "entitled to the broadest scope of review[,]" covering all justiciable issues raised and preserved below. *Id.* at 477; s*ee also Payne v. Pennsylvania Department of Health*, 240 A.3d 221, 225 n.6 (Pa. Cmwlth. 2020). This Court may substitute its own findings of fact for those of the OOR. *West Chester University of Pennsylvania v. Browne*, 71 A.3d 1064, 1067 n.4 (Pa. Cmwlth. 2013). We have the discretion to conduct a hearing, remand to the OOR, or accept additional evidence. *Id.*

Section 703 of the RTKL requires written requests to "identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested[.]" 65 P.S. §67.703. This Court has addressed the "sufficient specificity" requirement, and we summarize that precedent as follows.

5

In *Mollick v. Township of Worcester*, 32 A.3d 859, 871 (Pa. Cmwlth. 2011), the request sought "all emails between the [township s]upervisors regarding any [t]ownship business and/or activities for the past one and five years" and "all emails between the [township s]upervisors and the [t]ownship employees regarding any [t]ownship business and/or activities for the past one and five years." We held that the request was not sufficiently specific because "it would place an unreasonable burden on an agency to examine all its email for an extended time period *without knowing*, with sufficient specificity, [to] *what* [ ] *business or activity the request is related*." *Id.* (emphasis added).

By contrast, in *Easton Area School District v. Baxter*, 35 A.3d 1259, 1260 (Pa. Cmwlth. 2012) (*Baxter*), the request sought "'[a]ll emails sent and received between Oct[ober] 1 and Oct[ober] 31' for email addresses of nine school board members, the school district superintendent[,] and the general school board address." We held the request sufficiently specific because it was limited to a type of record, *i.e.*, emails, over a 30-day period, and it limited the number of email addresses. Notably, the school district had "already identified potential records included within the request," indicating that the burden placed on the school district was not unreasonable.[3] *Id.* at 1265.

In *Montgomery County v. Iverson*, 50 A.3d 281, 282 (Pa. Cmwlth. 2012) (*Iverson*), the request sought "all email records" between a given mail domain

---

[3] In *Department of Environmental Protection v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012), we clarified that "[t]he fact that a request is burdensome does not deem it overbroad, although it may be considered as a factor in such a determination." In *Legere*, the request sought, in relevant part, "[a]ll Act 233, Section 208 [of the Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. § 601.208, repealed by the Act of February 14, 2012, P.L. 87,] determination letters issued by the [Department of Environmental Protection] since January 1, 2008[.]" *Legere*, 50 A.3d at 262. This Court held that the specificity with regard to document type or subject matter outweighed the fact that the requester wanted "all" of the documents. *Id.* at 265.

and three other domains that contained 14 search terms. The 14 search terms were: "Newton[,] Fox Chase[,] Fox Chase–Newton[,] R8[,] HS–1[,] Pennypack[,] Trail[,] Greenway[,] Pa-tec[,] Bryn Athyn[,] Pitcairn[,] Parkhouse[,] Lorimer[, and] Bethayres." *Id*. We held that the request was not sufficiently specific because it lacked a time frame; did not identify specific individuals, email addresses, or departments; and did not provide any "context within which the search [could] be narrowed." *Iverson*, 50 A.3d at 284. Additionally, the search terms, such as "Trail," were excessively broad. *Id*. We explained that "*some subject matter context may be necessary*, as a practical matter, to narrow an otherwise overly broad request down to a *request that sufficiently informs an agency of the records requested*." *Id*. n.4 (emphasis added).

In *Carey v. Pennsylvania Department of Corrections*, 61 A.3d 367 (Pa. Cmwlth. 2013), the request sought all communications, including emails, regarding inmate transfers from state correctional institutions to a Michigan facility from 2008 to 2012. The request was held sufficiently specific because it "specifie[d] a subject matter, a finite time frame[, approximately four years,] and [sought] a discrete group of documents, either by type, as communications, or by recipient[.]" *Id*. at 372.

In the leading case, *Pittsburgh Post-Gazette*, 119 A.3d at 1123, the request sought "[a]ll of the emails of Acting Secretary of Education Carolyn Dumaresq as they pertain to the performance of her duties as Acting Secretary since she was appointed on August 25, 2014 to date." This Court put together the holdings of *Mollick*, *Baxter*, *Iverson*, and *Carey* to propound a three-part test for determining whether a request has met the specificity requirement in Section 703 of the RTKL. First, the request must identify the subject matter, *i.e.*, the "transaction or activity" of the agency for which the record is sought. *Pittsburgh Post-Gazette*, 119 A.3d at

7

1125. Second, the scope of the request must be limited to "a discrete group of documents, either by type . . . or by recipient." *Id*. (quoting *Carey*, 61 A.3d at 372). Finally, the "request should identify a finite period of time for which records are sought." *Pittsburgh Post-Gazette*, 119 A.3d at 1126. We described the time frame prong as "the most fluid of the three prongs, *and whether or not the requester's time frame is narrow enough is generally dependent upon the specificity of the request's subject matter and scope*." *Id*. (emphasis added). In other words, "failure to identify a finite time frame will not render an otherwise sufficiently specific request overbroad." *Id*. On the other hand, "an extremely short time frame will not rescue an otherwise overbroad request, except for in the most extraordinary circumstances." *Id*.

Applying this three-part test in *Pittsburgh Post-Gazette*, we held that the request for all the Acting Secretary's emails from August 25, 2014, to the present was not sufficiently specific but more akin to a "fishing expedition." *Id*. Although the request provided a finite time frame of 347 days, and the scope of the request was limited to emails, it did not specify any transaction, activity or particular duty for which information was sought. *Id*. Stated otherwise, it lacked a subject matter.

Thereafter, in *Office of the Governor v. Engelkemier*, 148 A.3d 522 (Pa. Cmwlth. 2016), we considered whether a request for emails over a period of 5 months, relating to 109 key words, sent or received by the Governor's chief of staff was sufficiently specific. The key words included names of individuals; organization names; and a variety of topics such as "2015-2016 Budget," "White House," "Cape Cod," "Massachusetts," "Pension Reform," "Veto," and "Liquor Privatization." *Id*. at 525. The OOR concluded that the email request was sufficiently specific, and the Governor's Office appealed.

8

This Court upheld the OOR. The list of 109 keywords raised a concern because keywords do not always satisfy the subject matter requirement. "If terms on a list are too general or too broad, a requester runs the risk that the request will be rejected for lack of specificity[.]" *Engelkemier*, 148 A.3d at 531. "A clearly-defined subject matter, such as 'liquor privatization,' by contrast, has a better chance of passing the specificity test." *Id.*

Ultimately, this Court found the subject matter sufficiently specific. The Governor's Office did not seek clarity of the requester's keywords but responded with a rolling production of the emails, which undermined its argument that it did not have sufficient information. The Court explained:

> If the [Governor's] Office had any lingering concerns over the specificity of the request, it should have raised the specificity concern at that time. It did not. It clearly acted as if it had sufficient information upon which it could fully process [the r]equester's request and, based on that representation, secured from [the r]equester an extension of time and agreement to a rolling production schedule.

*Engelkemier*, 148 A.3d at 532. While the requester's keyword list was "lengthy and in some respects broad," in consideration of the narrow time frame and scope of the records sought, *i.e.*, emails, and in light of the Governor's Office's acknowledged ability to provide the emails, we held that the requester's request, "on balance, [met] the specificity requirement of Section 703 of the RTKL." *Id.* at 532-33.

In *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119 (Pa. Cmwlth. 2017) (*Bagwell*), this Court used the *Pittsburgh Post-Gazette* factors to find two requests for emails to be sufficiently specific. The first request was for "[a]ll e[ ]mails, memos and letters exchanged by the [District Attorney] and the [City of Philadelphia's (City)] Office of Innovation and Technology between

9

July 1, 2013 and October 1, 2014 pertaining to searching for e[ ]mails on the [City's] email servers and/or backup copies of the [City's] e[ ]mail servers[.]" *Id.* at 1143 (quotation omitted). The second request was for "[a]ll e[ ]mails, letters and memos pertaining to the [District Attorney's] transition from Lotus Notes e[ ]mail platform to the Microsoft Exchange e[ ]mail platform between January 1, 2013 and December 31, 2013[.]" *Id.* at 1144. In finding these requests sufficiently specific, we concluded that the two requests sought "a clearly defined universe of documents." *Id.* at 1145.

Recently, in *Office of Governor v. Brelje*, 312 A.3d 928, 930 (Pa. Cmwlth. 2024) (*Brelje*), this Court considered two requests: one seeking "[a]ll incoming and outgoing email for Deputy Press Secretary Emily Demsey, Dec[ember] 1-Dec[ember] 10" and the other seeking "[a]ll incoming and outgoing email for Press Secretary Elizabeth Rementer, Dec[ember] 11-Dec[ember] 31." We held the requests sufficiently specific. The request did not identify a precise transaction or activity, but it identified two officials, and this satisfied the subject matter inquiry. Indeed, email communication is itself "an activity of the Governor's Office[.]" *Id.* at 938 (emphasis in original omitted). Further, email communications constitute "a discrete group of documents" that meet the scope of document requirement of *Pittsburgh Post-Gazette*, and the time frame–10 days and 21 days– was narrower than *Baxter*'s month-long period, and *Engelkemier*'s 5-month period. *Brelje*, 312 A.3d at 939. In sum, a request for email records from two specific people over the course of less than a month did not amount to a "fishing expedition" as found in *Pittsburgh Post-Gazette.* *Brelje*, 312 A.3d at 940. The agency had been provided with enough information to process the request.

The *Brelje* court clarified that *Pittsburgh Post-Gazette* did not establish a conjunctive test that requires each element of the test to be satisfied; rather, it set forth a "flexible, case[-]by[-]case, contextual application of the test." *Brelje*, 312 A.3d at 937 (citation omitted). The test is "more akin to a nonexclusive, multifactor test" a court uses in determining "whether a given item has the requisite features to classify it in a certain way," and a classic example of such a test determines whether a worker is an employee or independent contractor. *Id.* at 938. Further, no factor in the *Pittsburgh Post-Gazette* test is dispositive; "[t]he absence of a stated subject matter is but one factor to consider[.]" *Brelje*, 312 A.3d at 937-38 (citation omitted).

### Analysis

Having reviewed the extensive precedent on specificity, we conclude that Item No. 7 of the Request was sufficiently specific under the *Pittsburgh Post-Gazette* test. In so holding, we view the precedent differently than do the parties.

We reject Requester's argument that *Engelkemier* is dispositive because it is factually distinguishable. In *Engelkemier*, the Governor's Office proposed a rolling production of the emails, thereby acknowledging that it was informed of the documents requested. By contrast, here, the State Police has not made such an acknowledgement about Item No. 7 of the Request.

On the other hand, we reject the argument of the State Police that Item No. 7 of the Request is similar to the one rejected in *Mollick*. The *Mollick* request sought "all emails" between the township supervisors and "all emails" between the township supervisors and township employees "regarding *any township business and/or activities.*" *Mollick*, 32 A.3d at 871 (emphasis added). Similarly, in *Pittsburgh Post-Gazette*, 119 A.3d at 1123, the request sought "[a]ll of the emails" relating to "the performance of [the Acting Secretary's] duties."

Here, Item No. 7 did not seek employee emails on any or all activities of the agency or performance of employee duties. Rather, it listed 14 keywords: "Houck," "King's Men," "Kings Men," "abortion," "pro-life," "prolife," "Christian," "Christianity," "Catholic," "Catholicism," "radial-traditionalist, Catholic," "radical traditional Catholic," "RTC," and/or "Roman Catholic." R.R. 2a. It did so in the context of Item Nos. 1-6 of the Request. The 14 keywords in Item No. 7 relate to the arrest of Mark Houck and his organization "Kings Men" and, further, to the State Police's handling of religion-related matters especially regarding "pro-life" and "abortion." Unlike *Mollick* and *Pittsburgh Post-Gazette*, the Request provided a context for the 14 keywords.

The Request is also distinguishable from that in *Iverson*, 50 A.3d at 282, which sought all email records between a given mail domain and three other domains containing 14 completely unrelated search terms (i.e., "Newton[,] Fox Chase[,] Fox Chase–Newton[,] R8[,] HS–1[,] Pennypack[,] Trail[,] Greenway[,] Patec[,] Bryn Athyn[,] Pitcairn[,] Parkhouse[,] Lorimer[, and] Bethayres"). Lacking was any information to "narrow an otherwise overly broad request down to a request that sufficiently informs an agency of the records requested." *Id.* at 284 n.4. Here, the 14 keywords in Item No. 7 related to one another and to Item Nos. 1-6. Accordingly, the 14 keywords have provided the "subject matter context" that "sufficiently informs" the State Police of the records requested. *Id.*

The State Police argues that Item No. 7 lacked a subject matter because, unlike Item Nos. 1-6, it did not have limiting parameters. The State Police points out the following language in the Request:

> For purposes of Requests 1-6, *we believe that communications may exist* between or including the following individuals: Trooper Michael Rogers, Trooper Juan Barrios, the supervisor(s) of Trooper Michael Rogers and Juan Barrios, or any officer that

12

was involved in the approval or investigation of the decision to have Michael Rogers and Juan Barrios participate in Mr. Houck's arrest (including forwarded email messages or CC or BCC email messages).

R.R. 2a (emphasis added). This language did not set parameters; it provided suggestions as to which officers *may* have the records relevant to Item Nos. 1-6. Notably, Item Nos. 1-6 requested "any and all communications," but Item No. 7 requested only email records.

The State Police also argues that Item No. 7 of the Request was not as precise as the one in *Carey* or *Bagwell*. However, "[t]here is no bright-line rule absolutely requiring a requester to precisely identify the subject matter of the requested record." *Brelje*, 312 A.3d at 937 (quoting *Methacton School District v. Office of Open Records* (Pa. Cmwlth., No. 250 C.D. 2021, filed December 28, 2021), slip op. at 3-4). Keyword search terms can be used to provide the subject matter, and they will not suffice only when they are "too general or too broad." *Engelkemier*, 148 A.3d at 531. "Trail" and "Fox Chase" are nearly infinite. *Iverson*, 50 A.3d at 282, 284. That is not the case with "Kings Men" or "Houck."

In any event, the requests in *Carey* and *Bagwell* were broader in scope and longer in duration than those of Item No. 7 in the Request. In *Carey*, the request sought all communications, not just emails, over an approximately four-year period for inmate transfers from state correctional institutions to a Michigan facility. It was held sufficiently specific. In *Bagwell*, the request sought all emails, memos and letters exchanged by the District Attorney and the City of Philadelphia's Office of Innovation and Technology for a 15-month period; for emails on the City's email servers; and all emails, letters and memos pertaining to the District Attorney's transition of email platforms, for a 12-month period. The request was held sufficiently specific.

13

The State Police points out that unlike Item Nos. 1-6, Item No. 7 did not specify a State Police employee but, rather, asked for "[a]ll emails generate[d] by, received by, or exchanged between or including [State Police] personnel or officers[.]" R.R. 2a. This requires the State Police to search into the email records of its 6,000 employees for any of the 14 search terms. State Police Brief at 14. However, the fact that a request is burdensome does not in itself render the request not specific. *Legere*, 50 A.3d at 265.

The size of the request is not dispositive of specificity under Section 703 of the RTKL. In *Carey* and *Bagwell*, the request covered all employees of the government agency and concerned not only emails, but also other types of communications such as letters and memos. Here, Item No. 7 of the Request covers all State Police employees but asked only for emails containing certain search terms that were generated over a much shorter period of time (6 months). Finally, email constitutes "a discrete group of documents" that satisfies the scope requirement in *Pittsburgh Post-Gazette*. *Brelje*, 312 A.3d at 939. Notably, the request upheld in *Engelkemier* was also for email records and for a similar time frame (approximately over 5 months).

The OOR read Item No. 7 of the Request as having nothing to do with the remainder of the Request. This is strained and illogical, particularly since "Kings Men" appears in both Item Nos. 5 and 7. The State Police is critical of the draftsmanship of the Request, but that is not a basis for denying a record request. The RTKL is intended to give all citizens, lay or professional, access to the workings of the Commonwealth's state and local governments. A request need only provide enough information to inform "an agency of the records requested." *Iverson*, 50

14

A.3d at 284 n.4.  We hold that Item No. 7 of the Request has provided enough information to inform the State Police of the records requested.

## Conclusion

The *Pittsburgh Post-Gazette* factors weigh in favor of holding Item No. 7 of the Request to be sufficiently specific under Section 703 of the RTKL.  The subject matter of Item No. 7 was limited by the 14 search terms, which, read in conjunction with Item Nos. 1-6, provided a context that informed the State Police of the records requested.  Item No. 7 also identified the scope of the documents, *i.e.*, emails, and it set forth a narrow time frame, approximately 6 months.  This was sufficient to allow the State Police to process the Request.  We hold that the OOR erred in concluding that Item No. 7 of the Request was not sufficiently specific under Section 703 of the RTKL.

Accordingly, we reverse the OOR's January 12, 2024, final determination.

_____
MARY HANNAH LEAVITT, President Judge Emerita

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Greim,                       :
           Petitioner         :
                            :
         v.                    :       No. 105 C.D. 2024
                            :
Pennsylvania State Police (Office   :
of Open Records),              :
           Respondent      :

# **O R D E R**

AND NOW, this 17th day of January, 2025, the final determination of the Office of Open Records in the above-captioned matter, dated January 12, 2024, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita