# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania Historical & Museum Commission, | : | **CASES CONSOLIDATED** |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Alec Ferretti (Office of Open Records), | : | |
| | : | |
| Respondent | : No. 1359 C.D. 2024 |
| | | |
| Ancestry.com Operations, Inc., | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Alec Ferretti and Pennsylvania Historical & Museum Commission (Office of Open Records), | : | |
| | : No. 1360 C.D. 2024 | |
| Respondents | : Argued: February 4, 2026 | |


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE STELLA M. TSAI, Judge


OPINION
BY JUDGE WALLACE                          FILED: March 31, 2026

The Pennsylvania Historical & Museum Commission (Commission)[1] and Ancestry.com Operations, Inc. (Ancestry)[2] petition for review of the September 17, 2024 Final Determination Upon Remand (Final Determination) of the Pennsylvania Office of Open Records (OOR), which granted Alec Ferretti's (Requester)[3] request (Request) made pursuant to the Right-to-Know Law (RTKL).[4] Also pending before this Court is Requester's interim request for counsel fees based on the Commission's alleged bad faith in denying the Request, and Ancestry's Application to Strike (Application) certain paragraphs of Requester's brief to this Court for inclusion of materials outside the record. Upon careful review, we reverse the OOR's Final Determination, remand and direct the OOR to deny the Request, deny Requester's request for counsel fees, and deny Ancestry's Application.

## I. Background

On September 1, 2022, Requester submitted the Request to the Commission seeking the following:

All documents scanned (and subsequent indexes and metadata created) pursuant to the Contract[5] signed in 2008 between the [Commission] and

---

[1] The Commission is a Commonwealth agency responsible for preserving Pennsylvania's public records and the Pennsylvania State Archives. Reproduced Record (R.R.) at 138a.

[2] Ancestry is a for-profit genealogy company that provides free and subscription online access to genealogical and historical records, including birth and death records, marriage licenses, and military service records. R.R. at 174a.

[3] Requester is a New York resident and board member of Reclaim the Records, a group dedicated to providing free online access to public historical records. R.R. at 1a, 176a.

[4] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[5] In 2008, the Commission entered into a Licensing Agreement (Agreement) with The Generations Network, now Ancestry, for scanning and indexing services. R.R. at 38a. The Agreement **(Footnote continued on next page…)**

> [Ancestry], along with all documents scanned (and subsequent indexes and metadata created) pursuant to any addenda to that contract, including but not limited to all birth and death records and all metadata for birth and death records.

R.R. at 6a-7a.[6]  On September 9, 2022, the Commission denied the Request, contending it did not have custody, possession or control of the responsive records,  and denied an obligation to create a record under Section 705 of the RTKL, 65 P.S. § 67.705.  *Id.* at 4a-5a.  That same day, Requester appealed to the OOR.  *Id.* at 1a-3a.

On September 30, 2022, the Commission restated its original grounds for denial and additionally raised insufficient specificity pursuant to Section 703 of the RTKL, 65 P.S. § 67.703.  *Id.* at 31a-32a.  In support, the Commission submitted the sworn attestation of Cynthia Bendroth (Bendroth Attestation), its Open Records Officer.  *Id.* at 33a.  On October 25, 2022, Requester submitted a position statement arguing the Commission controlled the records, his Request was sufficiently specific, and the Commission could transfer the requested data on hard drives.  *Id.*

permitted Ancestry to access, scan, index and publish on its websites the Commission's microfilm records; namely, to create "Licensed Materials."  *Id.*  In exchange, the Commission would receive a digital copy, and free online access to view the Licensed Materials for up to 20 simultaneous users at the State Archives.  *Id.*  The Commission did not pay Ancestry for the digitization.  *Id.* at 174a.   Ancestry spent approximately $3.25 million to access, scan, index and digitize the Commission's records.  *Id.*  In 2016, the Commission's leadership realized the immense cost of maintaining the Licensed Materials, i.e., between $297,000 and $321,000 per year for nearly 45 terabytes of data, and executed a new agreement (Addendum) with Ancestry for Ancestry to maintain this data on its servers.  *Id.* at 135a, 144a.  In exchange, staff, patrons and researchers within the State Archives may access this data for free, and Ancestry's customers may access it for a fee.  *Id.*

[6] Index is defined as "a collection of information stored on a computer or on a set of cards, in alphabetical order."  *Index*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/dictionary/english/index (last visited Mar. 30, 2026).  Metadata is defined as "information that is given to describe or help you use other information."  *Metadata*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/dictionary/english/metadata (last visited Mar. 30, 2026).

3

at 34a-37a. On November 14, 2022, the Commission replied to Requester's position statement, reiterating its original grounds for denial and adding an exemption from disclosure based upon Section 708(b)(24) of the RTKL, 65 P.S. § 67.708(b)(24), for "archived materials"[7] of the Commonwealth. *Id.* at 81a-82a.

On December 6, 2022, the Commission provided a third submission in response to the OOR's request for clarification on several matters, *id.* at 83a-84a, including accessibility of the electronic records and associated fees, downloading the requested records from Ancestry's website, the inclusion of metadata in any records accessed through the Commission's link to the Ancestry website, and the Commission's asserted "archived materials" exemption. *Id.* at 85a-87a. The Commission explained all Pennsylvania residents may access the scanned records from any location, free of charge, by entering their Pennsylvania zip code on the Pennsylvania State Archives Ancestry page. *Id.* at 85a. All users, including non-Pennsylvanians such as Requester, may access the entire Ancestry website, including the scanned records, free of charge in the State Archives Reading Room during normal business hours. *Id.* The Commission clarified "[t]he metadata of each digital scan of a State Archives record is not available to the public via the Ancestry portal." *Id.* The Commission argued the metadata, created by Ancestry with each scan and housed on Ancestry's servers, does not constitute a "public record" under Section 506(d) of the RTKL, 65 P.S. § 67.506(d). *Id.* at 86a. The Commission also reiterated the applicability of the "library archived and museum

---

[7] Section 708(b)(24) provides an exemption for "[l]ibrary archived and museum materials, or valuable or rare book collections or documents contributed by gift, grant, bequest or devise, to the extent of any limitations imposed by the donor as a condition of the contribution." 65 P.S. § 67.708(b)(24). Throughout this opinion, we refer to this as the "archived materials" exemption, the "library archived and museum materials" exemption, and the "archived and museum materials" exemption;" however, all terms are intended to reference Section 708(b)(24).

4

materials" exemption, which avoids needless copying of materials available to the public in libraries or state museums, because the scans relate to records housed in the State Archives, accessible to the public. *Id.* Finally, the Commission clarified granting the Request would breach its Agreement with Ancestry. *Id.* at 87a.

On December 8, 2022, Requester submitted a reply to the Commission's third supplemental submission. *Id.* at 88a-91a. He explained that as a non-Pennsylvania resident, he cannot access the records for free on the Pennsylvania State Archives Ancestry website. *Id.* at 88a. Further, he noted that even if he paid for a subscription to Ancestry's service, downloading all digital images included in the Request would violate Ancestry's user agreement. *Id.* at 88a-89a. Requester argued, much like the scanned images, the Commission cannot avoid producing the metadata based solely on the lack of physical possession. *Id.* at 89a. Additionally, Requester refuted applicability of the "archived and museum materials" exemption, as it only applies to archival materials donated with confidentiality provisions. *Id.* Overall, Requester argued an agency cannot "contract their way around [the RTKL]." *Id.* at 90a.

On January 26, 2023, the OOR granted Requester's appeal. *Id.* at 134a-54a. On February 27, 2023, the Commission appealed to this Court. *See Pa. Hist. and Museum Comm'n v. Ferretti*, (Pa. Cmwlth., No. 190 C.D. 2023, filed Jul. 26, 2023). Ancestry filed an "Unopposed Application . . . for Intervention," which this Court granted. *See id.*, slip op. at 3. Thereafter, Ancestry filed an "Application . . . to Supplement the Record or, Alternatively, to Remand to [OOR]," which this Court granted in part by remanding the appeal to the OOR "for such action as the OOR deems necessary, including the issuance of a new order from which any aggrieved party may appeal." R.R. at 155a-58a.

5

On November 13, 2023, Ancestry, the Commission and Requester filed supplemental submissions to the OOR. *Id.* at 159a, 192a, 241a. The Commission argued it did not contract with Ancestry to perform a governmental function; thus, the requested records in Ancestry's possession do not constitute "public records" subject to provision under Section 506(d)(1) of the RTKL. 65 P.S. § 67.506(d)(1). In support, the Commission offered the sworn attestation of David W. Carmichael (Carmichael Attestation), State Archivist. R.R. at 208a-11a. Ancestry reiterated the absence of a contract with the Commission to perform a governmental function and also contended the requested records fall within the RTKL's exemption for "confidential proprietary information" provided in Section 708(b)(11), 65 P.S. § 67.708(b)(11). Ancestry emphasized Requester seeks not only the digital scans, but also the indexes and metadata created by Ancestry using its confidential and proprietary process and not included in the original records provided by the Commission to Ancestry.

On September 17, 2024, the OOR issued the Final Determination, granting Requester's appeal and directing the Commission to obtain the requested records from Ancestry and disclose them to Requester. *Id.* at 265a-87a. Although the parties do not dispute the Commission does not actually possess the digitized records, the OOR explained the Commission failed to prove it did not need to obtain those records from Ancestry under Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1). The OOR found that by entering into the Agreement with Ancestry for the digitization of voluminous amounts of Commonwealth records under its care, the Commission delegated a governmental function to Ancestry, in turn, making the records presumptively public and subject to public access.

To define the Commission's powers and duties, the OOR looked to the "Declaration of Policy" and the general powers of the Commission in the History Code, 37 Pa.C.S. §§ 101-906, which included "the preservation of public records," and "provid[ing] for historical research and interpretation and public access to this heritage." *See* 37 Pa.C.S. §§ 102(2), 301(2), 301(4). The OOR rejected the fact that Ancestry approached the Commission about the prospect of digitizing, as maintenance of the records falls within the Commission's governmental function, and "the [Commission]'s records are still the same Commonwealth records, regardless of format." R.R. at 276a.

Additionally, the OOR found Section 2.2 of the Agreement between the Commission and Ancestry supportive of designation of governmental function as Ancestry granted the Commission a "non-transferable right and license to use the Licensed Materials for the benefit of its patrons or its own internal use." *Id.* The OOR also determined the Commission could not remove the digitized version of its records from the RTKL simply by designating them as "Licensed Material" in a contract. *Id.* at 275a-76a.

Finally, the OOR found neither Ancestry nor the Commission proved the digitized records, including indexes and metadata, were exempt from disclosure. Additionally, the OOR rejected the Commission's argument that the scanned images constitute a "complex and extensive dataset," for which it can charge fees based upon fair market value under Section 1307(b)(4)(i) of the RTKL, 65 P.S. § 67.1307(b)(4)(i). *Id.* at 285a. The Commission and Ancestry filed timely appeals to this Court, seeking a reversal of the OOR's Final Determination, which we *sua sponte* consolidated for review.

7

## II.    Issues

The Commission and Ancestry raise the following issues for our review: (1) whether the OOR erred as a matter of law in determining the Agreement between the Commission and Ancestry obligated Ancestry to perform a governmental function; (2) whether the OOR erred in finding that because Ancestry's indexes and metadata are currently available to the public, they do not fall within the confidential and "proprietary information" exemption to the RTKL; (3) whether the OOR erred as a matter of law in determining scanned copies of State Archives records and their indexing metadata are not within the "archival records" exemption of the RTKL; and (4) whether the OOR erred as a matter of law in determining the Request does not constitute a complex and extensive data set for which the Commission could charge fair market value fees. Additionally, the Commission challenges Requester's entitlement to counsel fees under the RTKL, and Ancestry questions whether certain paragraphs of Requester's brief should be stricken for raising matters outside the record.

## III.    Analysis

We have summarized our standard and scope of review in RTKL appeals from decisions of Commonwealth agencies as follows:

> Pursuant to Chapter 13 of the RTKL, with respect to appeals relating to decisions of Commonwealth agencies, this Court is the ultimate factfinder in RTKL disputes. Section 1301 of the RTKL, 65 P.S. § 67.1301. Accordingly, we owe no deference to the OOR's legal analysis or factfinding, as our standard of review of a final determination of the OOR is de novo. *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 ([Pa.] 2013). In addition, we are 'entitled to the broadest scope of review[,]' covering all justiciable issues raised and preserved below. *Id.* at 477. *See also Payne v. Pa. Dep't of Health*, 240 A.3d 221, 225 n.6 (Pa. Cmwlth. 2020). Unlike in other administrative agency contexts, 'we . . . may substitute our own findings of fact for that of the agency.' *W. Chester Univ. of Pa. v.*

*Browne*, 71 A.3d 1064, 1067 n.4 (Pa. Cmwlth. 2013). We have the discretion to conduct a hearing, or to remand to the OOR, to supplement the record. *Id.*

*Pa. Off. of Governor v. Brelje (Off. of Open Recs.)*, 312 A.3d 928, 932 (Pa. Cmwlth. 2024).

We begin with the Commission's and Ancestry's assertion that the Agreement did not obligate Ancestry to perform a governmental function. Section 506(d)(1) of the RTKL provides:

> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this action, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1). This Court has explained records in the possession of a party with whom an agency has contracted to perform a governmental function on behalf of the agency are presumptively public records subject to public access, "so long as the record (a) directly relates to the governmental function and (b) is not exempt under the RTKL." *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1039 (Pa. Cmwlth. 2011). Our Supreme Court has further clarified, this must include the "delegation of some substantial facet of the agency's role and responsibilities, as opposed to entry into routine service agreements with independent contractors." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1043 (Pa. 2012). Additionally, to qualify as a governmental function, the contract and performance of that contract must delegate an agency's "core governmental function." *Dep't of Pub. Welfare v. Eiseman*, 125 A.3d 19, 33 (Pa. 2015). Section 506 further provides, "[n]othing in this act shall be construed to require access to

9

any other record of the party in possession of the public record." 65 P.S. § 67.506(d)(2).

The OOR looked to the History Code to define the Commission's powers and duties. However, we disagree with the OOR's analysis. Section 102(2) of the History Code provides, "[t]he conservation of Pennsylvania's historic and natural heritage and the preservation of public records, historic documents and objects of historic interest, and the identification, restoration and preservation of architecturally and historically significant sites and structures are duties vested primarily in the . . . Commission." 37 Pa.C.S. § 102(2). Additionally, the History Code enumerates the following general powers of the Commission:

(1) Serve as the official agency of the Commonwealth for the conservation of Pennsylvania's cultural heritage.

(2) Preserve public records, historical documents and objects of historical interest, possession and control of which have been transferred to the [C]ommission.

(3) Initiate, encourage, support and coordinate and carry out historic preservation efforts in this Commonwealth.

(4) Provide for historical research and interpretation and public access to this heritage.

(5) Sell to the public any publications that are published by any department, board, commission or officer of the Commonwealth.

37 Pa.C.S. § 301.

First, the Commission emphasizes that it is not statutorily mandated to digitize the physical records in its possession and control. In support, the Commission offers

10

the Carmichael Attestation,[8] which identifies the Commission's primary governmental function as the **preservation**, as opposed to digitization, of its public records, historical documents and objects of interest. Carmichael further attests the Commission preserves its original records onsite at the State Archives by maintaining microfilm and hard copies of documents. Moreover, the History Code does not specifically mention digitization. Thus, digitization is not a governmental function of the Commission under the History Code.

Second, the OOR construed the Agreement as a delegation of the Commission's governmental function. However, we disagree with the OOR's analysis. The Commission asserts it did not contract with Ancestry to perform a governmental function as it does not have any ownership in the digitized images. The Agreement clearly delineates the Commission's ownership of the original hard copy and microfilmed archival documents, versus Ancestry's ownership of the digitized and indexed scans. The Agreement defines Ancestry's Licensed Materials as the "resulting digital images and indexes created by [Ancsetry]," R.R. at 38a, which Ancestry owns and licenses back to the Commission under very limited circumstances, including "free access for up to 20 simultaneous users to Ancestry.com . . . on location at the [S]tate [A]rchive[s]." *Id.*

Ancestry notes other limitations include the Commission's obligation to maintain the confidentiality of Ancestry's "confidential information," which Ancestry contends includes its indexes and metadata, *id.* at 40a-41a, Agreement Section 7.1, and to return Ancestry's Licensed Materials upon termination of the Agreement. *Id.* at 41a, Agreement Section 8.3. The Agreement clarifies the

---

[8] Under the RTKL, a sworn affidavit or statement made under the penalty of perjury may serve as sufficient evidentiary support. *See Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515, 520-21 (Pa. Cmwlth. 2011); *Moore v. Off. of Open Recs.*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010).

Commission's interest in the Licensed Materials as "a non-exclusive, non-transferable right and license to use the Licensed Materials for the benefit of its patrons" and "solely for the use of individual patrons." *Id.* at 39a. The Agreement expressly prohibits the Commission from posting the Licensed Materials on the Commission's website for three years after creation and provides that should the Commission post the Licensed Materials thereafter, Ancestry will no longer provide the Commission with "free access to the Licensed Materials on-site, at the [S]tate [A]rchive[s]." *Id.* Further, the Commission provides the Bendroth Attestation to explain the Addendum, which gave the Commission the right to merely request, rather than automatically receive, copies of the digitized records. *Id.* at 33a. Thus, the express language of the Agreement, including the Addendum, evidences the Commission does not own Ancestry's private work product.

Third, the OOR found the Commission could not insulate the digitized records from access under the RTKL by keeping them in Ancestry's possession. However, we disagree with the OOR's analysis. In *SWB Yankees*, Lackawanna County formed a Stadium Authority to administer a multi-purpose stadium, which then delegated its entire responsibility of operating the ballpark to a third party. *SWB Yankees*, 45 A.3d at 1029. Because the Authority ceded its plenary powers over a primary governmental function and essentially deputized the third party as its agent, the Supreme Court held the RTKL extended to records in the third party's possession under Section 506(d)(1). *Id.* at 1044 ("where a government agency's primary activities are defined by statute as 'essential governmental functions,' and such entity delegates one of those main functions to a private entity via the conferral of agency status, Section 506(d)(1) pertains on its terms to non-exempted records directly relating to the function.").

Here, the Commission reiterates that no one disputes, and as observed by the OOR, the Commission does not have the requested records in its custody, possession or control. The Commission further asserts the digitized records and indexes and metadata constitute Ancestry's private work product, to which it only has a limited license. Ancestry reiterates the Commission did not hire it to create and index digital copies of records, and the Commission paid Ancestry no public funds. Rather, Ancestry invested $3.25 million of its own funds to access, scan, and index the Commission's records with its own confidential processes. R.R. at 174a.

Importantly, the Commission emphasizes its clarification for the OOR that "[t]he metadata of each digital scan of a State Archives record is not available to the public via the Ancestry portal." *Id.* at 85a. At most, the Commission argues the Agreement only contemplated a "basic index" as part of the Licensed Materials rather than the comprehensive proprietary search tools created by Ancestry for use by its customers. *See id.* at 38a, Agreement Section 1.2. Ancestry reiterates the OOR erred in ignoring this unrebutted evidence and finding Ancestry "failed to prove that disclosure of the 'final product,' which is purportedly 'available to the public through Ancestry.com and Pennsylvania Ancestry,' will reveal Ancestry's confidential proprietary processes used to produce the final product." Ancestry's Br. at 29, quoting Final Determination, R.R. at 280a.

Overall, we agree with the Commission's and Ancestry's contentions that the OOR erred in concluding the public could access Ancestry's "resulting indexes and the attached metadata" through Ancestry.com or Pennsylvania Ancestry.[9] *See* R.R. at 280a. Additionally, we agree with their assertions that the

_____

[9] In turn, the OOR errantly suggested as an alternative to providing the requested records on flash drives or hard drives, the Commission or Ancestry could "resolv[e] the matter by providing the **(Footnote continued on next page…)**

OOR erred in granting Requester, under the RTKL, access to Ancestry's work product because the Commission did not contract with Ancestry to perform its governmental function of permanently preserving public records and historical documents. Given this determination, we need not reach the remaining issues.

## IV.  Conclusion

For the reasons set forth above, we conclude the Commission did not contract with Ancestry to perform a governmental function, requiring fulfillment of the Request under Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1). Accordingly, we reverse the OOR's Final Determination and remand with directions to the OOR to deny the Request within 30 days. In addition, we deny Requester's interim request for counsel fees, and Ancestry's application to strike portions of Requester's brief.

 

 

_____
STACY WALLACE, Judge

---

Requester, and all other persons who meet the definition of a requester under the RTKL, with access to the records through the Ancestry Pennsylvania website, which is currently limited to Pennsylvania residents only, without explanation." R.R. at 286a (footnotes omitted).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania Historical & Museum Commission, | : | **CASES CONSOLIDATED** |
| | : | |
| Petitioner | : | |
| v. | : | |
| | : | |
| Alec Ferretti (Office of Open Records), | : | |
| | : | |
| Respondent | : | No. 1359 C.D. 2024 |
| | | |
| Ancestry.com Operations, Inc., | : | |
| Petitioner | : | |
| v. | : | |
| | : | |
| Alec Ferretti and Pennsylvania Historical & Museum Commission (Office of Open Records), | : | |
| | : | No. 1360 C.D. 2024 |
| Respondents | : | |

# **O R D E R**


**AND NOW**, this 31st day of March 2026, the Final Determination of the Pennsylvania Office of Open Records (OOR) is **REVERSED**, and the case is **REMANDED** to the OOR with directions to deny the request submitted by Alec Ferretti (Requester) pursuant to the Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104, within 30 days of the date of this Order.

In addition, Requester's interim request for counsel fees is **DENIED**. Ancestry.com Operations, Inc.'s application to strike portions of Requester's brief is also **DENIED**.

Jurisdiction relinquished.

 

_____

STACY WALLACE, Judge