IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Southeastern Pennsylvania | : | |
| Transportation Authority, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 48 C.D. 2024 |
| | : | |
| Faye Anderson and All That | : | Submitted: March 4, 2025 |
| Philly Jazz (Office of | : | |
| Open Records), | : | |
| Respondents | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                    FILED: May 1, 2025

Southeastern Pennsylvania Transportation Authority (SEPTA) petitions for review of the December 20, 2023 Final Determination of the Office of Open Records (OOR), which granted in part and denied in part the Right-to-Know Law (RTKL)[1] appeal of Respondent Faye Anderson, director of All That Philly Jazz (Requester). The OOR directed disclosure of certain records sought in Requester's 20-item RTKL request (Request) regarding the ongoing project to build a sports arena and entertainment venue on Market Street in the City of Philadelphia. The OOR further concluded that certain portions of the Request were insufficiently specific and declined to direct disclosure of any records requested in those portions.

In this Court, SEPTA contends that the OOR erred in concluding that any portions of the Request were sufficiently specific. In the alternative, SEPTA requests that it and any interested third parties be afforded the opportunity to establish the

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

applicability of exemptions to disclosure under Section 708 of the RTKL, 65 P.S. § 67.708.

Also before the Court are Requester's Application to Strike a portion of the Reproduced Record and requests for attorneys' fees and civil penalties.

Upon review, we affirm the OOR's Final Determination and deny Requester's Application to Strike and requests for attorneys' fees and civil penalties.

## I.     FACTS AND PROCEDURAL HISTORY

On August 1, 2023, Requester submitted the Request to SEPTA, seeking production of the following categories of records:

> [Item 1] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between [SEPTA] employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and David Adelman, chairman of 76 Devcorp, regarding the proposal to build a sports arena on the 1000 block of Market Street, hereinafter 76 Place;

> [Item 2] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and the Pennsylvania Department of Transportation, hereinafter PennDOT, and Langan Engineering and Environmental Services, Inc., hereinafter Langan, regarding 76 Place;

> [Item 3] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and PennDOT and Langan regarding meetings about 76 Place;

2

[Item 4] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 27, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of Gensler Design, including Alex Chan[,] regarding 76 Place;

[Item 5] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and Mayor Jim Kenney and his staff regarding 76 Place;

[Item 6] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and Councilmember Mark Squilla and his staff regarding 76 Place;

[Item 7] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer and representatives of CBL Real Estate LLC, including Tabb Bishop, Edward Hazzouri and Hadji Maloumian[,] regarding 76 Place;

[Item 8] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer about meetings with representatives of CBL Real Estate LLC, including Tabb Bishop, Edward Hazzouri and Hadji Maloumian[,] regarding 76 Place;

[Item 9] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Chief Leslie S. Richards and Operating Officer Scott Sauer, and Hercules Grigos and/or Katherine Missimer of Klehr Harrison Harvey Branzburg LLP regarding 76 Place;

[Item 10] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer about meetings with Hercules Grigos and/or Katherine Missimer of Klehr Harrison Harvey Branzburg LLP regarding 76 Place.

[Item 11] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and representatives of Harris Blitzer Sports & Entertainment, including Sherveen Baftechi, Nicole Ellis, Jonathan Fascitelli, David Gould, Jessica Granger, Alex Kafenbaum and Jim Leonard regarding 76 Place;

[Item 12] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of the Department of Planning and Development, including Anne Fadullon, Eleanor Sharpe and John Mondlak regarding 76 Place;

[Item 13] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April

1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of the Department of Planning and Development, including Anne Fadullon, Eleanor Sharpe and John Mondlak regarding meetings about 76 Place;

[Item 14] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] regarding "Philadelphia Weekly Connect" meetings about 76 Place;

[Item 15] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of Philadelphia Industrial Development Corporation, hereinafter PIDC, including Sam Rhoads regarding 76 Place;

[Item 16] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from April 1, 2022[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of PIDC, including Sam Rhoads regarding meetings about 76 Place;

[Item 17] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from March 1, 2023[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of PIDC, including Sam Rhoads regarding requests for proposals to independently evaluate 76 Place proposal;

[Item 18] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from March

5

1, 2023[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of PIDC, including Sam Rhoads regarding meetings about proposals to independently evaluate 76 Place proposal;

[Item 19] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from March 1, 2023[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of PIDC, including Sam Rhoads regarding appointments to advisory committee created to review and evaluate the responses for proposals to independently evaluate 76 Place proposal; and

[Item 20] Records, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates from March 1, 2023[,] to July 31, 2023[,] between SEPTA employees, including General Manager and CEO Leslie S. Richards and Chief Operating Officer Scott Sauer, and employees of PIDC, including Sam Rhoads naming members of advisory committee created to review and evaluate the responses for proposals to independently evaluate 76 Place proposal.

(Reproduced Record (R.R.) at 5a-8a.) SEPTA invoked a 30-day extension to respond pursuant to Section 902(b) of the RTKL, 65 P.S. § 67.902(b). Therein, SEPTA indicated that it required more time to review responsive records, determine if any Section 708 exemptions or privileges applied, and solicit input from other parties to determine whether certain records might be otherwise protected from disclosure. (R.R. at 9a.) On September 7, 2023, SEPTA denied the Request in its entirety as insufficiently specific under Section 703 of the RTKL, 65 P.S. § 67.703. SEPTA advised Requester in the denial that she should contact counsel for SEPTA to discuss

6

ways to more specifically request records so that SEPTA could conduct a good faith search. *Id.* at 13a-14a.

Requester appealed to the OOR, which, *inter alia*, directed SEPTA to notify the OOR of any third parties that might have responsive records containing confidential or proprietary information. (Supplemental Reproduced Record (S.R.) at 003b; Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c)). The OOR's directive stated as follows:

> If records affect a legal or security interest of a third party[,] contain confidential, proprietary or trademarked records[,] or are held by a contractor or vendor, **the agency shall notify the Appeals Officer immediately**. The Appeals Officer may direct the agency to notify such parties of the appeal and provide proof of that notice.
>
> **If directed to provide notice,** such notice will include: (1) [a] copy of all documents included with this letter; and (2) [a] statement advising relevant third parties that interested persons may request to participate in this appeal by contacting the Appeals Officer or completing the form at https://www.openrecords.pa.gov/Appeals/DIPRequest.cfm. ([*see*] 65 P.S. § 67.1101(c)).
>
> The Commonwealth Court has held that "the burden [is] on . . . third[-]party contractors . . . to prove by a preponderance of the evidence that the [requested] records are exempt. []*Allegheny County Department of Administrative Services v. A Second Chance, Inc.,* 13 A.3d 1025, 1042 (Pa. [Cmwlth.] 2011). **A third party's failure to participate in a RTKL appeal before the OOR, after receiving notice, may be construed as a waiver of objections regarding release of requested records.**

(S.R. at 003b-4b) (emphasis in original).

SEPTA obtained an extension to file its position statement so that it could engage in settlement discussions with Requester, which ultimately did not occur. In

7

its position statement submitted on October 17, 2023, SEPTA argued that the Request was insufficiently specific under all three prongs of the test enunciated by this Court in *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015). (R.R. at 66a-68a.) SEPTA attached to its position statement the Verified Statement of Allison DeMatteo (DeMatteo Declaration), SEPTA's Manager of Records and Information. Therein, Ms. DeMatteo attested that she conducted a test search of SEPTA's 15,476 email mailboxes and 2,216 SharePoint[2] sites for the 15-month period included in Item I of the Request using the search terms "76 Place" and "76 Devcorp." (R.R. at 72a.) The search returned 8,674 emails and 2,216 SharePoint sites, totaling approximately 7.6 gigabytes of data. (R.R. at 73a.) SEPTA argued in its position statement that "[t]he voluminous search results further support SEPTA's position that [the Request] is insufficiently specific for SEPTA to conduct a good faith search of its records." *Id.* at 70a. SEPTA did not offer any evidence or argument before the OOR regarding the applicability of any exemptions from disclosure pursuant to Section 708 of the RTKL, nor did it request an extension of its position statement deadline in order to do so.

The OOR issued its Final Determination on December 20, 2023, granting Requester's appeal in part and denying it in part. The OOR determined that Items 1, 4-13, and 15-20 of the Request were sufficiently specific, in part, to the extent that they identified specific categories of requested records, specific subject matters, specific senders and recipients of communications,[3] and specific timeframes. (OOR Final

---

[2] SharePoint is a software system used by SEPTA to store its non-email files. (DeMatteo Declaration, ¶ 7; R.R. at 72a.)

[3] Because each of Items 1, 4-13, and 15-20 identified senders and recipients, the OOR interpreted those items to seek only records that were exchanged between parties. (OOR Final Determination, at 12.)

8

Determination, at 9-13; R.R. at 85a-90a.) To the extent that those Items requested additional, unspecified categories of documents or identified nonspecific categories of senders or recipients, the Items were not sufficiently specific. *Id.* As to Items 2 and 3 of the Request, the OOR concluded that those items were insufficiently specific because they failed to identify any particular senders or recipients within Langan or PennDOT. *Id.* at 13. Lastly, the OOR concluded that Item 14 was sufficiently specific, in part, to the extent that it sought specific categories of records that were not exchanged between senders and recipients (e.g., letters, emails),but otherwise was insufficiently specific. *Id.* at 13-14. The OOR directed SEPTA to conduct a good faith search for the identified records and produce them to Requester within 30 days. *Id.* at 14.

SEPTA now petitions for review in this Court.

## II. ISSUES

SEPTA presents four issues for our review, which we can fairly combine and reorganize into two for purposes of analysis. First, SEPTA contends that the OOR erred in concluding that portions of the Request were sufficiently specific to enable SEPTA to identify and produce responsive records. Second, SEPTA argues in the alternative that, if the OOR's specificity determination stands, both SEPTA and other interested third parties must be permitted to introduce evidence and argument, either in this Court or on remand to the OOR, to establish the applicability of any exemptions from disclosure pursuant to Section 708 of the RTKL.

In support of its arguments, SEPTA includes in the Reproduced Record the Declaration of 76 DEVCO (76 DEVCO Declaration), dated April 22, 2024. Therein, Jonathan Fascitelli, the chief executive officer of "CBL Real Estate LLC d/b/a 76DevCo" (76 DEVCO), acknowledges and describes the contents of the Request and

the Items sought therein. (76 DEVCO Declaration, ¶¶ 10-12, 15; R.R. at 124a-25a.) Mr. Fascitelli further describes the confidential and proprietary information that 76 DEVCO shared with SEPTA regarding its proposals and plans for the development of 76 Place, which Mr. Fascitelli avers could be turned over by SEPTA in response to the Request. (76 DEVCO Declaration, ¶¶ 7-9, 12-15; R.R. at 124a-25a.) The 76 DEVCO Declaration nevertheless (1) does not aver whether or when 76 DEVCO received notice of the Request or the OOR proceedings or that any such notice was deficient, (2) does not request any particular relief from this Court, and (3) does not seek 76 DEVCO's participation in the proceedings in this Court.

In response, Requester contends that SEPTA's arguments are without merit and further requests that this Court award attorneys' fees and impose a civil penalty due to what Requester argues was SEPTA's bad faith failure to conduct a good faith search for responsive records. Requester also filed an Application to Strike the 76 DEVCO Declaration from the Reproduced Record because it is not contained in the certified record from the OOR. We directed that the Application to Strike be decided with the merits of Requester's petition for review.

## III. DISCUSSION[4]

### A. Application to Strike

---

[4] In appeals from final determinations of the OOR regarding RTKL requests submitted to Commonwealth agencies, this Court is the ultimate factfinder, and we exercise a *de novo* standard of review. Section 1301 of the RTKL, 65 P.S. 67.1301. We accordingly do not afford deference to the OOR's factfinding or conclusions of law and may substitute our own in whole or in part. *Bowling v. Office of Open Records*, 75 A.3d 453, 474 (Pa. 2013); *West Chester University of Pennsylvania v. Browne*, 71 A.3d 1064, 1067 n.4 (Pa. Cmwlth. 2013). We further exercise the broadest scope of review over all justiciable issues raised and preserved below. *Bowling*, 75 A.3d at 477; *Payne v. Pennsylvania Department of Health*, 240 A.3d 221, 225 n.6 (Pa. Cmwlth. 2020). In the event that our review requires further supplementation of the record, we may conduct a hearing or remand for the OOR to do so. *West Chester University*, 71 A.3d at 1067 n.4.

We preliminarily consider Requester's Application to Strike. Requester argues that SEPTA inappropriately included the 76 DEVCO Declaration in the Reproduced Record because it is not contained in the record from the OOR. SEPTA argues in response that its inclusion of the 76 DEVCO Declaration in the Reproduced Record was appropriate because neither it nor any interested third parties had the opportunity to present evidence before the OOR to establish any Section 708 exemptions, and SEPTA is seeking from this Court as alternative relief the ability to present such evidence either here or on remand. SEPTA also insists that Requester waived her ability to request that the 76 DEVCO Declaration be stricken by waiting to file her application more than six months after SEPTA filed the Reproduced Record. SEPTA further contends that it will be severely prejudiced if the Application to Strike is granted.

We deny the Application to Strike for two reasons. First, it is clear that the record before a Chapter 13 court, as we are here, may be supplemented pursuant to our *de novo* standard of review. *West Chester University*, 71 A.3d at 1067 n.4. Second, as set forth below, we consider the 76 DEVCO Declaration for only the limited purpose of determining whether any interested third parties may at this juncture be permitted to present evidence establishing the applicability of any exemptions from disclosure. Because we ultimately conclude that they may not, Requester is not prejudiced by the 76 DEVCO Declaration's inclusion in the Reproduced Record.

### B.    General RTKL and Specificity Principles

Records in the possession of a Commonwealth agency are presumed to be public. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). There are certain exclusions from this presumption, including, as pertinent here, records that are exempt pursuant to Section 708. Section 305(a)(1), 65 P.S. § 67.305(a)(1). An agency bears the burden

11

of proving that an otherwise public and responsive record is exempt from disclosure. 65 P.S. § 67.708(a)(1). The RTKL's deadlines are exacting and are part of a larger, built-in process designed to ensure efficient and timely determinations concerning requested public records. *Bowling*, 75 A.3d at 464, 474. Thus, agencies have only five days to respond to a RTKL request, which period may be extended in certain circumstances. Sections 901 and 902(a) of the RTKL, 65 P.S. §§ 67.901, 902(a). The OOR typically must decide appeals from agency decisions within 30 days, "[u]nless the requester agrees otherwise." Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1). If the OOR does not timely issue a final determination, the requester's appeal is deemed denied. 65 P.S. § 67.1101(b)(2).

Section 703 of the RTKL requires that written RTKL requests "identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested[.]" Section 703 of the RTKL, 65 P.S. § 67.703. In *Pittsburgh Post-Gazette*, we developed, based on our prior specificity cases, a nonexclusive three-factor test for determining whether a particular RTKL request is sufficiently specific. We recently summarized the *Pittsburgh Post-Gazette* test as follows:

> Specifically, we read our cases to suggest three factors that require consideration. First, with respect to subject matter, the request must identify a transaction or activity. Second, the scope must identify a discrete group of documents, either by type or by recipient. And finally, the timeframe of the request should identify a finite period of time for which records are sought. Importantly, we described the timeframe prong as the most fluid of the three[,] and whether or not the requester's timeframe is narrow enough is generally dependent upon the specificity of the request's subject matter and scope. Accordingly, if a request is extremely specific with respect to subject matter and scope, it may be less important to identify a finite timeframe. By contrast, an

12

extremely short timeframe will not rescue an otherwise overbroad request, except for in the most extraordinary circumstances.

*Pennsylvania Office of the Governor v. Brelje*, 312 A.3d 928, 935 (Pa. Cmwlth. 2024) (internal citations, quotations, and editing omitted). The analysis necessarily is context sensitive and is performed on a fact-intensive, case-by-case basis, with the statutory "polestar" of the inquiry being whether the request sufficiently describes or identifies the requested records such that the agency knows what to look for. *Id.* at 937. *See also id.* at 938 ("In determining whether a given request can be classified as sufficiently specific, courts must consider, consistent with *Pittsburgh Post-Gazette*, the extent to which the request specifies subject matter, the extent to which it defines the scope of the records it seeks, and the extent to which it limits the timeframe of the request."). A RTKL request might be insufficiently specific in some respects but sufficiently specific in others to enable the agency to respond. *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515, 516-17 (Pa. Cmwlth. 2010); *Pennsylvania Housing Finance Agency v. Ali*, 43 A.3d 532, 535-36 (Pa. Cmwlth. 2012). In determining whether a request, or any portion of it, is sufficiently specific, the OOR may interpret qualifying or limiting language appearing on the face of the request to conclude that it provides the agency with sufficient information to know what to look for. *Pennsylvania State System of Higher Education v. Association of State College and University Faculties ("APSCUF")*, 142 A.3d 1023, 1030 (Pa. Cmwlth. 2016) (*PASSHE*). Nevertheless, the RTKL does not authorize the OOR to refashion a request or add qualifying language to make it sufficiently specific. *Id.*; *Pennsylvania State Police*, 995 A.2d at 516; *Ali*, 43 A.3d at 535-36.

Additionally, although the burdensomeness of a particular request does not in itself render it overbroad or insufficiently specific, the burden on agency, or lack

13

thereof, in responding to a request is a relevant factor to consider in the specificity analysis. *Department of Environmental Protection v. Legere*, 50 A.3d 160, 165 (Pa. Cmwlth. 2012). *But see Carey v. Pennsylvania Department of Corrections*, 61 A.3d 367, 372 (Pa. Cmwlth. 2013) (burden on agency caused by its own failure to keep its records in a format conducive to responding to RTKL requests is not relevant to determining the sufficiency of a RTKL request). Relatedly, an agency's actual ability to search for, find, and produce responsive documents identified in a request, although not controlling, constitutes evidence that the request may be sufficiently specific, *i.e.*, that the agency has a place to start and knows what to look for. *See Brelje*, 312 A.3d at 933; *Lancaster County District Attorney's Office v. Walker*, 245 A.3d 1197, 1204 (Pa. Cmwlth. 2021); *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 179 (Pa. Cmwlth. 2019); *Easton Area School District v. Baxter*, 35 A.3d 1259, 1265 (Pa. Cmwlth. 2012).

## C. <u>Analysis</u>

### 1. Specificity

SEPTA first argues that the entirety of the Request is insufficiently specific on its face and that the OOR's Final Determination should be reversed in total.[5] SEPTA contends that the Request fails to identify specific transactions or activities, fails to identify a discrete category of requested records, and fails to identify a specific timeframe. SEPTA relies on the DeMatteo Declaration and its test search for responsive records to bolster its argument and further maintains that it should not have to interpret or modify the Request to render it sufficiently specific when it is insufficiently specific on its face. SEPTA claims that it attempted to work with

---

[5] SEPTA requests reversal despite the fact that the OOR concluded that certain Items or portions of Items in the Request were *insufficiently* specific.

14

Requester to clarify or modify the Request so that it could respond appropriately, but Requester declined to engage in settlement discussions. (SEPTA Br. at 22-29.)

We note first that SEPTA's brief analyzes the Request only generally and fails to offer any meaningful analysis with regard to each or any particular Item. Although SEPTA at times references specific terms in one or more Items, *see, e.g.*, SEPTA Br. at 22, 24-25, SEPTA does not argue in detail why the OOR's analysis was incorrect regarding, or why SEPTA was unable to specifically respond to, each or any Item. Although this failure to offer any meaningful analysis could result in waiver, *see City of Philadelphia v. Berman*, 863 A.2d 156, 161 (Pa. Cmwlth. 2004), we decline to find waiver in this instance given that both the OOR and Requester provided sufficient analysis to permit our review.

With regard to Items 1 and 4-20 of the Request,[6] we recite as follows the pertinent portions of the OOR's analysis, which was thorough and exhaustive:

> For each of the Items in the Request, a finite timeframe is identified. Items 1 through 16 include a 15-month timeframe (April 2022 - July 2023) and Items 17 through 20 specify a 4-month timeframe (March 2023-July 2023). A subject matter is also present for each Item of the Request, including "76 Place," "meetings about 76 place," "meetings with representatives" of certain entities, "[]Philadelphia Weekly Connect[,]" ["]meetings about 76 Place," "requests for proposals to independently evaluate 76 Place proposal," "meetings about proposals to independently evaluate 76 Place proposal," "appointments to advisory committee created to review and evaluate the responses for proposals to independently evaluate 76 Place," and "members of advisory committee created to review and evaluate the responses for proposals." In its position statement, SEPTA acknowledges that "76 Place" refers to "the potential stadium being

---

[6] Because the OOR concluded that Items 2 and 3 of the Request were not sufficiently specific, and because Requester has not challenged that determination here, we do not address those Items.

15

considered by the Philadelphia 76'ers to be built in and around 11th and Market Streets in Philadelphia;" thus, SEPTA understands the subject matter of the Request. . . .

The Request itself defines "76 Place" as "the proposal to build a sports arena on the 1[]000 block of Market Street." Contrary to SEPTA's argument that the Request does not sufficiently identify a subject matter, we find that the subject matters identified in each of the Items of the Request are sufficient to alert SEPTA as to the particular topic about which records are sought. . . . In certain instances, as discussed below, the subject matter is further limited by other parts of the Request.

Next, SEPTA argues that the scope of the Request is also overly broad because it fails to identify a discrete group of documents that are sought and, furthermore, that such documents are sought from "any and all" SEPTA employees. With regard to Items 1-13 and 15 -20, we would agree, with certain exceptions. Each of those Items seek[s] "[r]ecords, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates."

The Request also broadly identifies the senders and recipients of the documents requested, seeking the specified documents "between SEPTA employees" and others, including staff and employees of other agencies and entities. The evidence substantiates that SEPTA has more than 15,476 user email mailboxes and 2,216 SharePoint sites which could be implicated by Item 1 of the Request alone. Notwithstanding that, parts of the Request also list specifically named senders and recipients "between" whom the specified records were exchanged or shared. For example, while Item 1 seeks records between SEPTA's employees and David Alderman, Chairman of 76 Corp., Item 1 also specifically identifies two SEPTA employees, General Manager and CEO Leslie Richards and Chief Operating Officer, Scott Sauer, to which the Request pertains. There is no evidence before us to suggest that conducting a search for records exchanged between the specifically named individuals would be overly burdensome or result in the

16

identification of an unreasonable number of responsive records. As such, where specific senders and recipients are identified in the Request, those Items of the Request are sufficiently specific as to the specific individuals named. . . . Those named individuals, in conjunction with the specifically identified types of documents and [timeframes], should adequately limit the scope of the Request to allow SEPTA to conduct a search for responsive records. . . . To the extent that the Request attempts to identify senders and recipients as anything other than specifically named individuals, such as "staff" (Items 5 and 6), or generally as representatives or employees of entities, it is not specific enough in the context of the Request to aid SEPTA in its search. . . . These scopes and the general subject matter suffice to apprise SEPTA of the documents to be produced regardless of whether the timeframe is four or fifteen months.

It is worth noting that unlike the "emails" and "letters" that are requested, the other documents identified—invoices, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates—are somewhat narrower in scope in that they do not necessarily require a sender or recipient to be understood in the specificity paradigm. However, here, Items 1, 4-13 and 15-20 all exclusively seek records sent "between" persons or entities. Without further elaboration in the Request, this language must entail being shared or exchanged "between" the two groups/individuals listed. To the extent that the Requester intended otherwise, nothing in this Final Determination prevents her from filing a new Request.

In conclusion, Items 1, 4-13 and 15-20 are partially specific as to the identified types of documents, and specifically named individuals and specified timeframes, and SEPTA is directed to conduct a good faith search for records responsive to those parts of those Items of the Request. However, as noted above, to the extent that a type of record is not specifically identified or an individual person is not named, the Request is not sufficiently specific.

. . . .

17

Item 14 of the Request seeks "[r]ecords, including but not limited to, invoices, emails, letters, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates . . . regarding "'Philadelphia Weekly Connect' meetings about 76 Place" for a 15-month timeframe. While this Item has a [timeframe] along with a subject matter, the scope as it pertains to emails and letters is overly broad in that there are no senders, recipients or records custodians identified for a somewhat lengthy time period. . . . With regard to the remaining specifically named documents, however, (*i.e.*[,] invoices, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates) senders and recipients are not a prerequisite and the types of records themselves potentially suggest where SEPTA might conduct its search for such records. For example, invoices and cost estimates, to the extent they exist, might reasonably be located in a financial or planning department. Contrary to the other Items, Item 14 does not seek any documents exchanged between a group of senders and recipients. Thus, as to "invoices, reports, feasibility studies, traffic impact studies, architectural designs and cost estimates," Item 14 of the Request is specific enough to enable SEPTA to conduct a good faith search. While responding to a RTKL request requires accuracy and a good faith effort to provide all of the records sought, it is not an exact science, and must also encompass reasonable discretion and interpretation by the agency to identify and provide the requested information, particularly where the request is a broad one. . . . To the extent that Item 14 seeks emails or letters, or records other than those mentioned above, that Item of the Request is not sufficiently specific.

(OOR Final Determination, at 9-14; R.R. at 86a-91a.) We agree with the OOR's analysis in this respect, and its findings are supported by the record. The OOR properly balanced and applied all three of the *Pittsburgh Post-Gazette* factors as to each of Items 1 and 4-20 of the Request to identify those portions that seek specific categories of documents, exchanged between specific individuals, regarding a specific subject

18

matter, all within a limited timeframe. We agree with the OOR that those portions adequately tell SEPTA what to look for and, therefore, are sufficiently specific.[7]

SEPTA contends that, given the Request's facial lack of specificity, SEPTA should not have to further interpret or modify the Request to determine if responsive records exist. SEPTA also suggests that the OOR modified the Request to bring it into compliance with Section 703. We disagree on both counts. First, and as set forth above, the OOR agreed with certain arguments advanced by SEPTA with regard to the general or generic designations of senders, recipients, and categories of documents. The OOR limited SEPTA's disclosure responsibility to (1) those categories of records expressly identified in the several Items of the Request and (2) those records exchanged between specifically named individuals (except for Item 14, which does not request records exchanged between individuals). The OOR expressly concluded that the portions of the Request referring to all categories of documents to or from all employees of either SEPTA or another entity were insufficiently specific. The OOR thus largely addressed and resolved SEPTA's specificity objections in its Final Determination.

Second, the OOR did not, as SEPTA suggests, modify, narrow, or refashion the Request to make it sufficiently specific. Instead, the OOR balanced the three *Pittsburgh Post-Gazette* factors and determined that SEPTA need only search for the specific categories of records identified in the Request, exchanged (as applicable) between specifically identified individuals, within fairly short timeframes. The OOR did not supply any additional qualifications or limiting language, but rather interpreted

---

[7] We note that the mere fact that a request seeks communications to or from all employees of an agency does not necessarily render a request insufficiently specific. Where such a request also identifies a discrete category of communications, a specific subject matter or search terms, and a sufficiently limited timeframe, it may satisfy the requirements of Section 703. *See Greim v. Pennsylvania State Police (Office of Open Records)*, 329 A.3d 873, 882 (Pa. Cmwlth. 2025).

19

the Items in context and parsed out those portions that satisfied the *Pittsburgh Post-Gazette* test. The OOR's Final Determination in this respect was appropriate and supported by the record.

SEPTA also highlights the fact that it attempted to contact Requester on two occasions to discuss how the Request could be narrowed or modified to make it more specific. However, it is undisputed that SEPTA made both of these attempts *after* it invoked a 30-day extension of time to respond to the Request and *after* it issued its written denial on specificity grounds. (R.R. at 14a, 31a.) At that point, at least with regard to this Request, Requester's only option was to appeal to the OOR. Moreover, the parties attempted to amicably resolve their dispute after SEPTA petitioned for review in this Court. As part of that process, SEPTA conducted searches as directed by the OOR, identified responsive records, and provided an exemption log. Thus, if anything, the parties' attempts to resolve this matter have only further highlighted SEPTA's actual ability to search for responsive records as directed and limited by the OOR's Final Determination.

Lastly, the DeMatteo Declaration does not support SEPTA's contention that the Request was insufficiently specific. Ms. DeMatteo attested that she conducted a single search under Item 1 of the Request of all SEPTA email accounts and SharePoint sites using the search terms "76 Place" and "76 Devcorp" (DeMatteo Declaration, ¶¶ 5, 8; R.R. at 72a.) The search returned several thousand emails and SharePoint sites that together comprised several gigabytes of information. *Id.*, ¶¶ 9-10; R.R. at 72a-73a. Ms. DeMatteo did not conduct searches under any of the other Items of the Request and, notably, did not limit her search in accordance with the qualification in Item 1 that the requested records were those exchanged between SEPTA employees "and David Adelman, chairman of 76 Devcorp[.]" (R.R. at 5a.)

20

Including Mr. Adelman's name in the search terms presumably would have reduced the number of results markedly. In any event, we find SEPTA's test search to be of limited, if any, probative value.

In sum, we conclude that the OOR's Final Determination as to the specificity of the Request is supported by the record and in accordance with Section 703 of the RTKL and the precedent interpreting it. We accordingly affirm it.

### 2. Section 708 Exemptions

#### a. SEPTA

In the alternative, SEPTA requests that, if this Court agrees with the OOR's specificity determinations, SEPTA and any interested third parties must be permitted to present evidence in support of any applicable Section 708 exemptions either in this Court or on remand to the OOR. Although SEPTA acknowledges our precedents holding that the RTKL does not provide a mechanism for the bifurcation of issues before the OOR, *see, e.g.*, *Pennsylvania Department of Education v. Bagwell*, 131 A.3d 638, 652-53 (Pa. Cmwlth. 2015), SEPTA nevertheless requests clarification of our caselaw as to whether the RTKL permits a process pursuant to which "an agency may assert exemptions subsequent to a determination by the OOR that a request is sufficiently specific where the agency makes a good faith argument that the initial request is insufficiently specific." (SEPTA Br., at 30.) SEPTA contends that the current requirements are "illogical and perverse" and requests our implementation of a procedure that "allows for a review for exemptions subsequent to a determination that a request is not lacking in specificity." *Id.* at 31. SEPTA posits that this would not strictly require bifurcation but, rather, would be a "logical progression" in determining which records must be produced. *Id.* SEPTA concludes that, as a policy matter, Commonwealth agencies should not be compelled to simultaneously assert a

21

specificity challenge and find and review all potentially responsive documents for any applicable exemptions. *Id.* at 32.

Although the RTKL creates a presumption that records possessed by Commonwealth agencies are public, the presumption does not apply to records that are exempt from disclosure pursuant to one or more of the exemptions set forth in Section 708 of the RTKL, the applicability of which the agency must prove by a preponderance of the evidence. 65 P.S. §§ 67.305(a), 67.708(a). In enacting multiple and detailed exemptions from disclosure, the General Assembly also intended to "shield numerous categories and subcategories of documents from disclosure in order to protect, *inter alia*, the Commonwealth's security interests and individuals' privacy rights." *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 382 (Pa. 2013). *See also PASSHE*, 142 A.3d at 1031-32.

Section 902 of the RTKL accordingly provides for extensions of time to respond to a RTKL request where, as pertinent here, redaction of records is required, staffing limitations preclude a timely response, a legal review is necessary to determine whether a record is exempt, and/or the extent or nature of the request, including its breadth, scope, and generic or vague language, precludes a timely response. 65 P.S. § 67.902(a)(1), (3), (4), (7). Where those circumstances exist, an agency may invoke a 30-day extension and notify the requester of the same. In the event that an additional 30 days is not enough, the agency may seek the requester's consent to extend the response deadline to much longer than 30 days—there is no statutory limit. 65 P.S. § 67.902(b)(2). Thus, it is clear that the General Assembly intended that response timeliness issues be resolved at the outset, if possible, and not in the proceedings before the OOR or later.

22

Thereafter, where a requester files an appeal, the OOR has 30 days to issue a final determination, unless the requester agrees otherwise. 65 P.S. § 67.1101(b)(1). We noted in *Bagwell*, 131 A.3d at 660, that an agency must raise all challenges to a request before the factfinder closes the record and that there is no statutory authority for a bifurcated process before the OOR, particularly given the RTKL's strict timelines. Thus, where an agency does not submit evidence of exemptions and rests on its specificity argument before the OOR, the agency does not get another opportunity on remand from this Court to present evidence supporting any applicable exemptions. *Id.*

Nevertheless, extensions of time are available before the OOR to continue to review responsive records and present evidence as to any applicable Section 708 exemptions. For example, in *PASSHE*, the requesters sought a large volume of financial records maintained by 14 state universities over multiple years. Although it is unclear whether the universities in *PASSHE* requested an extension of time before the OOR, we concluded that the RTKL allows an agency to seek such extensions where the OOR's final determination deadline will not permit the agency to (1) review all responsive records and (2) submit adequate evidence establishing the applicability of any exemptions to disclosure. Agencies are not, however, entitled to such extensions as a matter of right:

> The agency making such a claim has to provide the OOR with a valid estimate of the number of documents being requested, the length of time that people charged with reviewing the request require to conduct this review, and if the request involves documents in electronic format[,] the agency must explain any difficulties it faces when attempting to deliver the documents in that format. Based on the above information, the OOR can then grant any additional time warranted so that the agency can reasonably discern whether any exemptions apply.

142 A.3d at 1032. We therefore remanded to the OOR to determine whether such an extension of time was warranted.

Relatedly, in *Brelje*, we determined that the Office of the Governor (Governor's Office) properly requested an extension of time to review responsive records pursuant to *PASSHE* and that the OOR erred in concluding to the contrary. 312 A.3d at 940. There, the Governor's Office challenged the RTKL request at issue on specificity grounds and, simultaneously, contended that certain exemptions from disclosure applied. The Governor's Office submitted with its position statement to the OOR an affirmation detailing the applicable exemptions and giving reasons why they likely would apply. *Id.* The position statement also expressly "request[ed] the opportunity to review and provide more detailed information regarding sufficient bases to withhold or redact those privileged or exempt records." *Id.* Based on those facts, we concluded that the Governor's Office had adequately presented a request under *PASSHE* for more time:

> We agree with the Governor's Office that the OOR erred in concluding that the Governor's Office raised its *PASSHE* argument either at the wrong time, or in the wrong manner. First, the [a]ffirmation details the applicable exemptions, noting specifically why such exemptions are very likely to apply based on the nature of the jobs and activities of the individuals to whose emails the [r]equests relate. Further, our Supreme Court has cited *PASSHE*, quite simply, for the proposition that an "agency . . . may request an extension of time [before the OOR] in which to comply with a RTKL request." *McKelvey* v. [*Pennsylvania Department*] of *Health*, [ ] 255 A.3d 385, 404 ([Pa.] 2021). Recently, [we] observed that an agencys' "failure to review the responsive documents and provide details as to why they fall within this exception, or to request additional time to do so, *PASSHE*, 142 A.3d at 1031-32, prevents a determination of whether a particular document involved was created during the course of a noncriminal investigation." [*Pennsylvania Public Utility*

24

*Commission*] *v. Friedman*, 293 A.3d 803, 831 (Pa. Cmwlth. 2023)[]. Upon review of the record, we are satisfied that, although it did not cite *PASSHE* itself in its position statement, the Governor's Office explicitly asked for additional time to identify records and conduct a legal review of exemptions.

. . . .

The [a]ffirmation explains that disclosure is reasonably likely to jeopardize or threaten public safety or preparedness and there exists a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, [or] infrastructure. Here, the Governor's Office asserted exemptions and asked for extra time. To deprive the Governor's Office of the opportunity to cull the records and identify exemptions would thwart the General Assembly's intent in enacting the RTKL to keep certain classes of records protected from public disclosure.

Accordingly, we conclude the Governor's Office properly requested an extension of time, pursuant to *PASSHE*, to identify responsive records and make exemption determinations, as an alternative argument to its insufficient specificity position. The OOR erred in concluding otherwise. Therefore, we vacate the [f]inal [d]etermination of the OOR insofar as it deemed this issue not properly raised and remand to allow the Governor's Office reasonable additional time to identify responsive records and claim specific applicable exemptions.

*Id.* at 940-41 (some internal citations, quotations, and bracketing removed).

Thus, both the text of the RTKL and our precedents make clear that an agency has multiple opportunities to seek additional time to review potentially responsive records where it also intends to lodge a specificity challenge. The agency may invoke a 30-day extension immediately upon receipt of the request and, upon agreement of the requester, extend the response deadline indefinitely to permit a thorough review. Before the OOR, if the agency again asserts a specificity challenge

25

and knows that it will require additional time to review documents to determine the applicability of exemptions, it may request immediately or in its position statement extra time to conduct its review in accordance with the dictates of *PASSHE*. We reaffirm today that there simply is no mechanism in the RTKL that permits the OOR to bifurcate the litigation and determination of multiple issues, including specificity challenges and substantive exemptions from disclosure.

Here, upon receipt of the Request, SEPTA invoked a 30-day extension until September 7, 2023, based on the scope and nature of the Request, purported staffing limitations, and the necessity of a legal review to determine, *inter alia*, whether any of the responsive records were exempt from disclosure pursuant to Section 708. (R.R. at 9a.) SEPTA also advised that it would produce otherwise responsive and non-exempt records earlier than the deadline after it reviewed them. *Id.* SEPTA ultimately denied the Request on specificity grounds alone and only then invited input from Requester about ways to more specifically identify documents. *Id.* at 10a-14a.

Before the OOR, SEPTA did not assert the applicability of any Section 708 exemptions, request additional time to review potentially responsive records for applicable exemptions, or give any indication that it needed extra time to conduct the review. Because SEPTA did not assert any Section 708 exemptions before the OOR or seek more time to do so, it has lost the ability to do so now or on remand from this Court. *Bagwell*, 131 A.3d at 655 (Commonwealth agency must raise and defend all applicable exemptions to disclosure before the OOR; if it does not, the ability to do so is lost). *See Commonwealth v. Engelkeimer*, 148 A.3d 522, 532 n.10 (Pa. Cmwlth. 2016) ("This is not a situation where an agency appropriately and timely raised concerns about the specificity of a request, but nonetheless acted in good faith in an attempt to identify potentially responsive records should its specificity challenge

26

fail."); *Pennsylvania Department of Health v. Shepherd* (Pa. Cmwlth., No. 377 C.D. 2021, filed May 13, 2022) (affirming OOR's denial of extra time to Commonwealth agency to submit additional evidence in support of exemptions because agency acted in dilatory fashion, knew early on that it possessed responsive documents, and could have reviewed 2,000-document set of responsive records prior to filing motion for reconsideration with the OOR seeking additional time to review).[8]

### b.    Third Parties

SEPTA also argues in its brief, for the first time,[9] that any interested third parties should now be permitted to present evidence and argument concerning the applicability of exemptions from disclosure. We disagree.

We have described as follows the interest of third parties in protecting against disclosure of their confidential records and information in response to a RTKL request:

> It is well-established that a third party has an interest in protecting its records in an agency's possession and that such interest may not be waived by the agency. [*West Chester University of Pennsylvania v. Rodriguez*, 216 A.3d 503, 510 n.10 (Pa. Cmwlth. 2019); *Highmark, Inc. v. Voltz*, 163 A.2d 485, 490 (Pa. Cmwlth. 2017)]. While "neither the requester, the agency, nor [the] OOR have a duty under the RTKL to provide notice to a third party whose interests may be implicated by a RTKL request[,]" we have "consistently recognized the serious due process concerns implicated by this lack of notice, particularly where the confidential information of a private entity is at stake." *Department of Corrections v. Maulsby*, 121 A.3d 585, 590 (Pa. Cmwlth.

---

[8] Unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value but not as binding precedent. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[9] SEPTA did not request alternative relief on behalf of any third parties in its petition for review. *See* Petition for Review, ¶ 36.

2015) (citing [*Office of the Governor v. Bari*, 20 A.3d [634,] 648 [(Pa. Cmwlth. 2011)]); *see also Bagwell v. Pennsylvania Department of Education*, 76 A.3d 81, 91 (Pa. Cmwlth. 2013) (recognizing "the necessity of protecting rights of third parties because the RTKL lacks a mechanism for providing notice and ensuring full participation"). Accordingly, we construe the RTKL to "afford due process to third parties, including the ability to submit evidence and assert exemptions at the appeals officer level." *Highmark*, 163 A.3d at 490.

When a RTKL request seeks confidential proprietary information that a third party submitted to an agency, the third party has a right to due process before the information is disclosed. *Id.* While due process in the RTKL context does not entitle a third party to the right to a hearing, "[t]he essential elements for due process before an OOR appeals officer are notice and an opportunity to be heard." *Id.*; *see also City of Harrisburg v. Prince*, 219 A.3d 602, 619 (Pa. 2019) (holding that under the RTKL, third parties must be afforded notice and an opportunity to be heard). Where a third party asserts that the requested information contains "confidential proprietary information" under the RTKL, the OOR must take all necessary precautions, such as conducting *in camera* review, before providing access to the information. *Maulsby*, 121 A.3d at 590; *Bari*, 20 A.3d at 648. In instances where the OOR fails to provide a third party whose record is sought with notice and/or a meaningful opportunity to be heard, the appropriate remedy is to vacate the OOR's final determination and remand to the OOR so that the third party can be given an opportunity to challenge the disclosure of the requested records. *See, e.g.*, *PharmaCann Penn LLC v. Ullery* (Pa. Cmwlth., Nos. 172-174, 183-184 [C.D. 2018] [], filed October 16, 2019)[] (vacating final determination and remanding to the OOR where the OOR failed to afford a third party an adequate time to respond to issues raised in appeal); *Pennsylvania Department of Conservation and Natural Resources v. Vitali*[] (Pa. Cmwlth., No. 1013 C.D. 2014, filed July 7, 2015) (vacating final determination and remanding to the

OOR where a third party was not notified of the request so that the third party could be given an opportunity to submit evidence concerning the exemption of records); *Maulsby*, 121 A.3d at 593 (vacating final determination and remanding to the OOR where the Department of Corrections failed to notify a third party).

While the RTKL does not provide a mechanism for third[-]party participation in every instance[,] where a third party's interest is implicated in a request, the RTKL specifically requires agencies to notify third parties where requests seek trade secrets. Section 707(b) of the RTKL, titled "Requests for trade secrets," provides as follows:

> An agency shall notify a third party of a request for a record if the third party provided the record and included a written statement signed by a representative of the third party that the record contains a trade secret or confidential proprietary information. Notification shall be provided within five business days of receipt of the request for the record. The third party shall have five business days from receipt of notification from the agency to provide input on the release of the record. The agency shall deny the request for the record or release the record within ten business days of the provision of notice to the third party and shall notify the third party of the decision.

65 P.S. § 67.707(b)[].

Additionally, while the RTKL does not require the OOR to notify third parties that have direct interests in appeals, [S]ection 1101(c)(1) of the RTKL envisions third-party involvement by providing as follows:

> A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information

29

> or to appear before the appeals officer or to file information in support of the requester's or agency's position.

65 P.S. § 67.1101(c)(1).

*Pennsylvania Turnpike Commission v. Electronic Transaction Consultants Corp.*, 230 A.3d 548, 557-558 (Pa. Cmwlth. 2020) (footnotes and emphasis omitted).

Thus, third parties have, in certain circumstances, the right to participate in RTKL proceedings where the disclosure of their confidential or proprietary records or information may be disclosed as part of a response to a RTKL request.[10] This right may not be waived by the agency responding to the request because, quite simply, the agency does not stand in the shoes of the third party and cannot itself assert the third-party's right to any disclosure exemptions. Resultantly, in every instance where we have concluded that a third party was not afforded due process before the OOR, *that party* asserted its rights before either the OOR, this Court, or both. We accordingly vacated the OOR's final determination and remanded to permit the challenging party, but not others, to present evidence supporting exemptions from disclosure. *See, e.g.*, *Pennsylvania Turnpike Commission*, 230 A.3d at 551, 559-60, 563-64 (third party, upon receiving notice of OOR appeal, filed response to appeal and thereafter petitioned for review in this Court to argue lack of adequate notice and absence of due process; OOR final determination vacated); *Maulsby*, 121 A.3d at 586-88, 593 (third party who was not notified of OOR proceedings until seven days after the OOR's final determination requested to participate in any further OOR proceedings and sought and was granted intervention in this Court to assert due process and inadequate notice claims; OOR final determination vacated); *PharmaCann Penn, LLC*, slip op. at 19-21

---

[10] Section 708(b)(11) protects from disclosure "[a] record that constitutes or reveals a trade secret or confidential proprietary information." 65 P.S. § 67.708(b)(11).

(third party that did not have meaningful opportunity to be heard before the OOR requested to participate before the OOR and petitioned for review in this Court asserting notice and due process claims; OOR final determination vacated); *Vitali*, slip op. at 6, 16-18 (third party that did not receive notice of initial RTKL request or appeal before the OOR intervened in this Court requesting remand to the OOR so that it could present evidence as to trade secret/confidentiality exemptions; OOR final determination vacated).

Here, although there is no evidence in the record from the OOR or in this Court as to whether or when SEPTA notified any third parties, including 76 DEVCO, of the proceedings before the OOR, it is undisputed that 76 DEVCO was aware of the Request and the proceedings before both the OOR and this Court by at least April 22, 2024, the date the DEVCO Declaration was executed. Nevertheless, neither 76 DEVCO nor any other third parties have sought to participate in the proceedings before the OOR or intervene or otherwise participate in the proceedings in this Court. Although the 76 DEVCO Declaration asserts that certain records that might be produced in response to the Request contain confidential and/or proprietary information, it does not aver that 76 DEVCO received inadequate notice or was not afforded due process. SEPTA simply cannot assert those claims on behalf of 76 DEVCO or any other party. Thus, although we acknowledge and reaffirm the rights of interested third parties to notice and due process in RTKL proceedings regarding their confidential or proprietary records, no third parties have asserted such rights in this Court, and we have nothing before us from any of those parties pursuant to which we could grant the relief SEPTA seeks. We therefore decline SEPTA's request that we vacate and remand to the OOR for the presentation of evidence by third parties.

31

### 3.    Attorneys' Fees and Civil Penalties

Finally, we turn to Requester's request for an award of attorneys' fees and the imposition of a civil penalty pursuant to Sections 1304 and 1305 of the RTKL, 65 P.S. §§ 67.1304, 67.1305.  Requester contends that "the record is clear that it was not until eight months after [Requester] submitted her Request, after this case already had progressed through the OOR, and after briefing in this Court, that SEPTA assessed the scope of the public records at issue, whether any exemptions might apply, and whether a third party might be impacted by the release of the subject records."  (Requester Br. at 22.)  Requester therefore insists that "SEPTA's self-evident failure to adequately search for responsive records, both at the outset of the [ ] Request and during the OOR process, evidences bad faith."  *Id.*  SEPTA argues in response that Requester has not established that SEPTA has engaged in bad faith by either failing to conduct a good faith search or denying access to public records.  SEPTA highlights that its initial denial based on insufficient specificity included detailed legal argument, which it expanded and further explained before the OOR.  SEPTA also notes that the OOR agreed with several of its arguments regarding the insufficient specificity of certain portions of the Request and denied Requester's appeal, in part, accordingly.  Lastly, SEPTA points out that it has attempted to work with Requester throughout these proceedings to resolve the parties' dispute, which Requester initially was not willing to do.  (SEPTA Reply Br., at 7-10.)

Section 1304(a) of the RTKL provides as follows:

**(a) Reversal of agency determination.--If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied**, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

32

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

65 P.S. § 67.1304(a) (emphasis added). Thus, where an agency has responded to a request, this Court is statutorily empowered to award court costs and reasonable attorneys' fees if we reverse the agency's final determination. *Id.*; *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 243 A.3d 19, 34 (Pa. 2020). We further must find that an agency either "willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith" or asserted "exemptions, exclusions or defenses . . . [that] were not based on a reasonable interpretation of law." *Id.* Relatedly, Section 1305 of the RTKL provides that a "court may impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith." 65 P.S. § 67.1305(a).

Before imposing costs, fees, or penalties under either Section 1304 or Section 1305, we must make findings of fact that an agency has acted in bad faith. *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1140 (Pa. Cmwlth. 2017). Bad faith includes an agency's failure to conduct a good faith search for responsive records to a request and determine whether they are public. *Id.* at 1140-41; *Uniontown Newspapers*. It also includes a failure to comply with a final determination of the OOR. *Bagwell*, 155 A.3d at 1141. By way of example, in *Bagwell*, we found bad faith where a district attorney's office (1) based its request denial on the identity of the requester and the presumed intended use of the records; (2) failed to cite any legal authority in support of its denial; (3) did

33

not make a good faith search for the requested records; and (4) misrepresented binding RTKL precedent and the state of the law throughout the proceedings. *Id.* at 1142.

Here, although the OOR granted Requester's appeal, in part, regarding SEPTA's blanket denial on specificity grounds, the OOR did conclude that portions of the 20-Item Request were insufficiently specific, a conclusion that is not challenged in this Court. Further, SEPTA included detailed legal argument in its initial denial, position statement before the OOR, and brief to this Court. SEPTA also has manifested throughout these proceedings a willingness to resolve this matter amicably. As part of that process, SEPTA has attempted to search for and identify responsive records and log possible exemptions to disclosure. It also has made a colorable, rational argument identifying the difficulty in simultaneously asserting a blanket specificity objection and arguing for the applicability of Section 708 exemptions. Although we ultimately reject that argument, it is not so bereft of merit to indicate bad faith on SEPTA's part either in conducting its initial search or litigating the appeals before the OOR and this Court. We therefore will not find that SEPTA has acted in bad faith, and we accordingly deny Requester's requests for an award of attorneys' fees and the imposition of civil penalties.

## IV.   CONCLUSION

In sum, we (1) conclude that the Request, as explained and limited by the OOR, was sufficiently specific to enable SEPTA to search for and locate responsive records, which it ultimately did; (2) conclude that SEPTA failed to assert, and waived its ability to establish, the applicability of any exemptions to disclosure pursuant to Section 708 of the RTKL; (3) conclude that no interested third parties have established their right at this juncture to present evidence regarding any exemptions from

34

disclosure; (4) deny Requester's claim for attorneys' fees and civil penalties; (5) deny Requester's Application to Strike; and (6) affirm the OOR's Final Determination.


                              _____

                              PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southeastern Pennsylvania : 
Transportation Authority, : 
        Petitioner : 
       v. : No. 48 C.D. 2024
  : 
Faye Anderson and All That : 
Philly Jazz (Office of : 
Open Records), : 
        Respondents : 

## ***ORDER***

AND NOW, this 1st day of May, 2025, the December 20, 2023 Final Determination of the Office of Open Records (OOR) is hereby AFFIRMED. It further is ordered that Respondents' Application to Strike is DENIED, and Respondents' requests for attorneys' fees and the imposition of civil penalties are DENIED.

 

_____
PATRICIA A. McCULLOUGH, Judge